[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 210 
¶ 1. Joe T. Cunningham was convicted of burglary of a dwelling. He was sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections with ten years suspended, leaving ten years to be served. Aggrieved by his conviction, Cunningham has appealed and has raised the following issues that we cite verbatim:
 I. The trial court erred by failing to declare a mistrial following testimony that Joe Cunningham had stolen a bicycle from Howard Gunn, by failing to instruct the jury to disregard this testimony, and by failing to allow Joe Cunningham to call Curtis Cunningham as a witness to rebut the allegation.
 II. The trial court erred by giving Instruction No. S-6 to the jury.
 III. The trial court erred when it denied Joe Cunningham's motion for a peremptory instruction, and when it denied Joe *Page 211 
Cunningham's motion for a new trial or, in the alternative, a judgment notwithstanding the verdict, because the verdict of the jury was not supported by the evidence.
 IV. The trial court erred by giving Instruction No. S-5 to the jury.
 V. The trial court erred by giving "Instruction No. S-3" and "Instruction No. S-4" to the jury.
 VI. The trial court erred by denying the Defendant-Appellant's "Motion to Quash Jury Venire."
 VII. The trial court erred by denying the Defendant-Appellant's ore tenus motion for a continuance.
 FACTS
¶ 2. On December 23, 1998, the Chickasaw County area was struck by an ice storm, which substantially disrupted utility services. Among the people impacted by this disruption was Howard Gunn of Okolona, who moved his family into a Tupelo hotel to await restoration of utility services. On Christmas day, the Gunn family briefly returned to check their residence and store their Christmas gifts. The Gunns moved back into their home on December 27, 1998 and discovered that it had been burglarized. Among the items determined to be missing were two jewelry boxes and the contents of four other jewelry boxes which belonged to Gunn's daughter Latasha, some men's clothing and other items belonging to Mrs. Gunn and the younger daughter.
¶ 3. Cunningham and his family were neighbors of the Gunns. On December 29, 1998, Latasha stopped Cunningham to inquire as to whether he might have seen anyone or anything suspicious as related to the burglary of their home. Noticing a gold chain with a number 30 around Cunningham's neck, Latasha informed him that it was hers and had been taken in the burglary.
¶ 4. The Gunns reported this to the police and Cunningham was arrested at his home. At the time of Cunningham's arrest, only the gold necklace with the number 30 was retrieved from Cunningham. Several weeks after Cunningham's arrest, a search of his home yielded nothing. However, a second gold chain with a cross was recovered when Cunningham wore it to his preliminary hearing, where it was identified by Latasha as hers, and made a part of the State's evidentiary presentation.
¶ 5. A day or so prior to trial, the State provided Cunningham with twenty additional pages of discovery material, prompting him to moveore tenus for a continuance. While denying this motion, the court allowed him twenty minutes to read the new information.
¶ 6. Cunningham moved to quash the jury venire because it was chosen from both judicial districts of Chickasaw County, rather than the second district where this event occurred. This motion was denied.
¶ 7. Mr. Gunn and Latasha testified that the two chains recovered from Cunningham were Latasha's property. Cunningham offered testimony that these items belonged to him, and identified what he claimed to be their source.
¶ 8. During cross-examination, Gunn testified to an earlier incident where *Page 212 
Cunningham was alleged to have stolen his bicycle. The trial court overruled Cunningham's objection, but did allow him to present testimony as to the ownership of the bicycle.
¶ 9. Cunningham defended the charge of burglary with testimony that he stayed with his sister in Verona from about December 22, 1998 through December 28, 1998.
¶ 10. The jury found Cunningham guilty of burglary of a dwelling.
 I.
Whether the trial court erred by failing to declare a mistrial followingtestimony that Joe Cunningham had stolen a bicycle from Howard Gunn, byfailing to instruct the jury to disregard this testimony, and by failingto allow Joe Cunningham to call Curtis Cunningham as a witness to rebutthe allegation.
¶ 11. Cunningham alleges that he was prejudiced by the following testimony:
 MR. STENNETT: . . . We've worked on cases, and from all your experiences does that make sense to you that a person that is guilty would come into court wearing something he allegedly stole if he knew it to be stole[n]?
 MR. GUNN: Let me explain. A year and a half [ago] Mr. Cunningham stole my bike and was riding down the road on it, I caught him.
¶ 12. He suggests that the prejudice was manifested when (1) the court declined his request for a mistrial following this testimony, (2) the jury was not instructed to disregard this testimony and (3) when the court refused to allow Curtis Cunningham, who was present in the courtroom, to rebut this testimony.
¶ 13. The granting of a mistrial is a matter within the sound discretion of the trial court. Ragin v. State, 724 So.2d 901 (¶ 13) (Miss. 1998) (citing Hoops v. State, 681 So.2d 521, 528 (Miss. 1996));Bass v. State, 597 So.2d 182, 191 (Miss. 1992); Ladner v. State,584 So.2d 743, 753 (Miss. 1991). Being present, the trial court is in a better position to hear this evidence and evaluate its prejudicial input. Amiker v. Drugs for Less, Inc., 97-CA-01493-SCT (¶ 21) (Miss. Oct. 10, 2001). Taking into consideration, all relevant circumstances, the trial court declined a mistrial but granted a cautionary instruction. That instruction was S-6. Jurors are presumed to follow the court's instructions. Campbell v. State, 750 So.2d 1280
(¶ 13) (Miss. 1999). The trial court did not err by denying Cunningham's motion for a new trial after Cunningham elicited the testimony from the victim on cross-examination.
¶ 14. Cunningham has also complained that Curtis Cunningham should have been permitted to rebut the allegations regarding the stolen bicycle.
¶ 15. The rule of sequestration was invoked by this petitioner. Curtis Cunningham, who was not a scheduled witness, remained in the courtroom. Whether the rule of sequestration is strictly enforced is a matter within the discretion of the trial court. Baine v. State,604 So.2d 258, 263 (Miss. 1992). In this case, the trial court determined that it should be strictly enforced because there were other persons available, who testified to the information that Curtis Cunningham would have presented.
 II. Whether the trial court erred by giving Instruction No. S-6 to the jury.
¶ 16. Cunningham argues that jury instruction No. S-6 was prejudicial. The instruction read: *Page 213 
 The Court instructs the jury that the evidence regarding the defendant having previously stolen Howard Gunn's bicycle was admitted into evidence solely for the purpose of explaining the defendant's actions in regard to wearing the jewelry in the presence of the victim, and should be considered by you solely for that purpose.
The record reveals no objections to S-6 because Cunningham failed to object to the giving of the State's instruction 6, the issue is procedurally barred and cannot be raised on appeal for the first time.Brown v. State, 781 So.2d 925 (¶ 12) (Miss.Ct.App. 2001). Accordingly, this issue is without merit.
 III.
Whether the trial court erred when it denied Joe Cunningham's motionfor a peremptory instruction, and when it denied Joe Cunningham'smotion for a new trial or, in the alternative, a judgment notwithstandingthe verdict, because the verdict of the jury was not supported by theevidence.
¶ 17. Cunningham argues that the State failed to prove beyond a reasonable doubt that he was guilty of burglarizing the Gunns' residence, and he was therefore entitled to a peremptory instruction. Since the trial court refused the peremptory instruction, Cunningham suggests that he was entitled to a judgment notwithstanding the verdict.
¶ 18. Both the request for peremptory instruction and judgment notwithstanding the verdict suggest that State's evidence has fallen short, and as matter of law the defendant is entitled to a verdict of acquittal. Butler v. State, 544 So.2d 816, 819 (Miss. 1989). In reviewing the grant or denial of a peremptory instruction or a judgment notwithstanding the verdict, the Court must review the evidence in the light most favorable to the verdict. May v. State, 460 So.2d 778, 780-81 (Miss. 1984).
¶ 19. In this case, there were no eyewitnesses nor other direct evidence that Cunningham burglarized the Gunns' home. He was however connected to the burglary by circumstantial evidence. That evidence consisted of (1) a gold chain belonging to Latasha which led to his arrest and (2) a second gold chain belonging to Latasha that Cunningham wore to his preliminary hearing on this burglary charge.
¶ 20. The unexplained possession of recently stolen property is a circumstance from which culpability may be inferred. Brooks v. State,695 So.2d 593, 595 (Miss. 1997). In considering that inference, Mississippi has utilized the following standard:
 1. The temporal proximity of the possession to the crime to be inferred;
 2. The number or percentage of the fruits of the crime possessed;
 3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
 4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.
(Cosby v. Jones, 682 F.2d 1373 (11th Cir. 1982)).
¶ 21. The first chain was discovered on Cunningham's neck four days after the burglary. When confronted by Latasha, Cunningham attempted to flee. The second chain was discovered on Cunningham's neck at the preliminary hearing. Cunningham gave conflicting explanations as to how he came into possession of the chains.
¶ 22. This failure to present an explanation created a question of fact to be resolved by the jury Reynolds v. State, *Page 214 776 So.2d 698 (¶ 7) (Miss.Ct.App. 2000), and precluded the grant of peremptory instruction, or a judgment notwithstanding the verdict. Because this Court finds that the evidence created a question of fact to be resolved by the jury, it must also conclude that the failure to grant a new trial was not error. Green v. State, 762 So.2d 810 (¶ 5) (Miss.Ct.App. 2000).
 IV.
Whether the trial court erred by giving Instruction No. S-5 to the jury.
¶ 23. Cunningham argues error in the granting of instruction S-5, which read:
 The Court instructs the jury that possession of property recently stolen is a circumstance which may be considered by the jury from which in the absence of a reasonable explanation, the jury may infer guilt.
¶ 24. The record reflects that Cunningham objected because S-5 did not address all of the elements of burglary:
 INSTRUCTION NO. S-5: BY MR. STENNETT: I don't think that's a proper instruction, your Honor, that can infer guilt as to the burglary. It does not contain all the elements that's got to be proven for burglary. It might infer guilt as to some other crime, but I don't think as to burglary. I'm going to object to that.
¶ 25. On appeal, he asserts for the first time that S-5 was improper because it did not set forth the four Brooks factors in determining what, if any inference, was to be drawn from Cunningham's possession of stolen property. An objection to a jury instruction not made to the trial court will not be considered for the first time on appeal:
 [N]o assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection. . . . a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial.
Avera v. State, 761 So.2d 900 (¶ 15) (Miss.Ct.App. 2000). Accordingly, this issue is procedurally barred.
 V.
Whether the trial court erred by giving Instruction No. S-3 andInstruction No. S-4 to the jury.
¶ 26. Cunningham argues instructions, S-3 and S-4, aiding and abetting instructions, were extremely prejudicial because the State did not offer evidence of the involvement of any other person in the burglary. He suggests that this failure allowed the jury to speculate as to the involvement of unknown persons and convict him based upon the acts of unknown persons. The instructions complained of read:
No. S-3:
 The Court instructs the jury that each person present at the time of and consenting to and encouraging the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an element of the crime, or immediately connected with, or leading to its commission, is as much a principal as if he had with his own hand, committed the whole offense.
 No. S-4:
 The Court instructs the jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all, and all are equally *Page 215 
responsible for the acts of each in the commission of the such felony.
¶ 27. In O'Flynn v. Owens-Corning Fiberglass, 759 So.2d 526
(¶ 18) (Miss.Ct.App. 2001), this Court held that:
 "With any granted jury instruction challenged on appeal, two questions are necessarily implicated: Does the instruction contain a correct statement of the law, and is the instruction warranted by the evidence?" Langston v. Kidder, 670 So.2d 1, 5 (Miss. 1995) (citations omitted). "A party is entitled to have the jury instructed regarding a genuine issue of material fact so long as there is credible evidence in the record which would support the instruction."
First Investors Corp. v. Rayner, 738 So.2d 228 (¶ 26) (Miss. 1999). While Cunningham questioned the Gunns as to whether someone else might have been responsible for the burglary, there is no credible evidence in the record which supports the giving of these instructions. They, therefore, should not have been given.
¶ 28. While finding that these instructions should not have been given, this Court finds that giving them was at worst harmless error.
 VI.
Whether the trial court erred by denying Cunningham's Motion to QuashJury Venire.
¶ 29. Chickasaw County is a small county with two judicial districts and a limited jury pool. The trial judge recognized that the victim, Howard Gunn, was a well-known public figure, and decided that the jury venire should be drawn from both judicial districts. Cunningham moved to quash the venire and replace it with a venire drawn solely from the second district, which motion was denied.
¶ 30. The process for selecting a jury venire is spoken to by Miss. Code Ann. § 13-5-21 (1972 Amended) which provides:
 Jury list in counties with two circuit districts provides: In counties where there are two (2) circuit court districts, the jury commission shall make a list of jurors for each district in the manner directed for a county, and the same shall be treated in all respects as for an entire county. In such counties a juror shall not be required to serve out of his district, except should the court, in its discretion, otherwise direct, and except when drawn on a special venire. In either of such excepted cases, the jury shall be drawn from the two (2) boxes if the court so direct, one (1) names for each alternately.
This section allows the trial judge to (1) at his discretion use a venire from both judicial districts or (2) draw from both districts in the selection of a special venire. The Mississippi Supreme Court has likewise stated that the statutory jury selection process is discretionary and unless used in a matter which was fraudulent, unfair or deprived the defendant of due process, it did not warrant reversal. De La Beckwith v.State, 707 So.2d 547 (¶ 199) (Miss. 1998).
¶ 31. The record before this Court does not suggest that the jury selection process was fraudulent, unfair or deprived Cunningham of due process.
 VII.
Whether the trial court erred by denying Cunningham's ore tenus motionfor a continuance.
¶ 32. As his last assignment of error, Cunningham claims to have been prejudiced by the denial of his ore tenus motion for continuance. As a basis for this motion, he stated that on the previous day, *Page 216 
the State had given him an additional twenty pages of discovery. He requested, "I'm not asking for the trial to be continued indefinitely. I just want a little time this morning prior to voir dire to do that, tell him what's in here."
¶ 33. The trial court agreed to give him twenty minutes prior to starting voir dire. There is nothing in the record to suggest that this was inconsistent with Cunningham's needs. Nor does Cunningham now suggest a specific prejudice following from this twenty minute recess.
¶ 34. Immediately prior to resting, Cunningham made another oretenus motion. The purpose of this second motion was to allow him to investigate to determine if there existed a possibility that unnamed persons might have information on this burglary. In short, Cunningham was requesting an opportunity for a fishing expedition.
¶ 35. Mississippi case law and statutes provide guidance for this assignment of error. The decision to grant a continuance is a matter committed to the discretion of the trial court. Wilson v. State,716 So.2d 1096 (¶ 8) (Miss. 1998). In addition, the Miss. Code Ann. § 99-15-29 (2000) recognizes a trial judge's discretion to grant or deny motion for continuance.
¶ 36. On these facts, we cannot say that the trial court abused its discretion.
¶ 37. THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT OFCONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY YEARS IN THECUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARSSUSPENDED, FIVE YEARS OF POST-RELEASE SUPERVISED PROBATION, PAY $5,727RESTITUTION, AND PAY $100 TO THE VICTIM'S COMPENSATION FUND IS AFFIRMED.ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS,CHANDLER AND BRANTLEY, JJ., CONCUR.