872 So.2d 65 (2004)
Arnold Jeffrey JOHNSON, Appellant
v.
STATE of Mississippi, Appellee.
Lester Bledsoe, Appellant
v.
State of Mississippi, Appellee.
Nos. 2002-KA-01406-COA, 2002-KA-01409-COA.
Court of Appeals of Mississippi.
January 20, 2004.
Rehearing Denied April 27, 2004.
*67 James P. Vance, B. Leon Johnson, attorneys for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and THOMAS, JJ.
THOMAS, J., for the Court.
¶ 1. Lester Bledsoe and Arnold Johnson were convicted of armed robbery by a Calhoun County jury. Both were sentenced to thirty-five years' imprisonment as habitual offenders. Both have appealed and the cases have been consolidated for our review.
¶ 2. Bledsoe and Johnson both allege the eyewitness identifications of them by the victims should have been suppressed, and the verdict was against the overwhelming weight of the evidence. Johnson also argues the trial court erred in refusing to grant a requested continuance and by excluding certain testimony. For the reasons discussed below, we affirm.

FACTS
¶ 3. Around 9:00 p.m. on June 15, 2001, a man knocked on the door of the home of Wayne and Nona Faye Clark, claiming he wished to make a payment on the Steen account. The Clarks own and operate a furniture store and sometimes finance purchases for customers. On occasion, customers would come by the house after business hours to make payments.
¶ 4. Wayne Clark allowed the caller into the house. Very shortly afterwards, a second man entered the house. Mr. Clark, sensing trouble, attempted to draw a pistol from his pocket but the weapon snagged on his clothing. The second intruder seized the gun and turned it on Mr. Clark. This same individual tied up Mr. Clark while the other tied up Mrs. Clark and pushed her to the floor behind a couch. A third man entered the house and rifled through the rooms. Mr. Clark's wallet and some jewelry were taken and the men left together.
¶ 5. The Clarks freed themselves and proceeded to a neighbor's home to contact police. At the time, they gave the following descriptions of the robbers:
(1) Black male, second to enter, big man, 240-50 pounds, 5'9" or 10" with dark skin, a big round face and wearing a faded blue bandana.
(2) Black male, third to enter, 150-160 pounds, slim face, dark skin.
(3) Black male, first to enter, 160-170 pounds, neat hair, dressed casually.
¶ 6. No suspects were apprehended until October 2001. In the interim, the Clarks had attended a live line-up which did not include any of the appellants and they did not identify anyone at that time. In October, Mrs. Clark saw photographs in the newspaper of three individuals accused of robbing a bank in another town and immediately recognized two of them as the men who had robbed the Clarks in June. Mrs. Clark showed the photos to her husband, who recognized all three men. Authorities *68 were notified and a photo array was brought for the Clarks to view. Mr. Clark identified all three menArnold Jeffrey Johnson, Lester Bledsoe and Jeffrey Hubbard, a/k/a Jeffrey Sally. Mrs. Clark identified Johnson and Hubbard but not Bledsoe.
¶ 7. Johnson, Bledsoe and Hubbard were jointly indicted but the court granted a motion to sever Hubbard's case and the trial proceeded with Johnson and Bledsoe only. The jury found both men guilty and this appeal followed.

ANALYSIS

1. Eye witness identifications
¶ 8. Both appellants argue the identification of them should have been suppressed because the photo array shown to the Clarks was unduly suggestive. The same photographs used in the newspaper bank robbery article were also used in the photo array. Bledsoe and Johnson's photos were inverted but otherwise the three pictures appeared side by side much as the newspaper had printed. The appellants also argue that contradictions between the Clarks' original statements and those made at a suppression hearing rendered the identification too unreliable to have been presented to the jury. Bledsoe adds the claim that law enforcement drew an "X" beneath his photo, conspicuously singling him out for misidentification.
¶ 9. Constitutional law dictates that identification procedures comport with due process requirements. Neil v. Biggers, 409 U.S. 188, 196, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). What is proscribed are unnecessarily suggestive pretrial identification procedures where a substantial likelihood of misidentification exists. York v. State, 413 So.2d 1372, 1380-81 (Miss. 1982). Due process requires that police say or do nothing which would prompt a witness to identify a particular individual. Coleman v. Alabama, 399 U.S. 1, 5-6, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). However, even an identification resulting from an unnecessarily suggestive identification procedure is not automatically to be excluded. York, 413 So.2d at 1381. If, under the totality of the circumstances, the identification is reliable, evidence concerning the out-of-court identification would still be admissible. Id.
¶ 10. As a preliminary matter, we note that Mrs. Clark never identified Bledsoe, only Mr. Clark. As Mrs. Clark explained, she was shoved behind the couch by the time the third intruder entered the home and she never saw him but for the briefest of glimpses through the front door. The third individual was identified by Mr. Clark as Bledsoe. Testimony as to when the officer placed an "X" beneath Bledsoe's photo differed. It was drawn either after Mr. Clark had identified all three men and before Mrs. Clark was shown the photo array, or after the array was shown to Mrs. Clark and the officer marked the individual photo to denote that Mrs. Clark did not identify Bledsoe.
¶ 11. Whichever version of the timing is correct, the mark clearly played no part in the identification of Bledsoe. All witnesses who testified stated that the "X" was not present when Mr. Clark identified Bledsoe. The mark therefore could not have persuaded Mr. Clark to make the choice he did. Even had the mark been present when Mrs. Clark viewed the photos, she never identified Bledsoe. She cannot have been led to make a misidentification through a suggestive procedure when she made no identification at all.
¶ 12. As to the remainder of the argument, the first step must be to determine whether or not the State engaged in an unnecessarily suggestive identification procedure. We cannot find that it did. *69 The photographs used were mug shots, a common practice in putting together photo arrays for identification procedures and, in and of itself, does not equal a suggestive procedure.
¶ 13. The Clarks identified the suspects from the newspaper. They were quite certain of their identification and notified the police. It is this identification which must be reviewed for possible taint as a result of improper State conduct. We cannot find that the identifications were in any fashion connected with State activity. Had the Clarks been unable to identify Johnson and Bledsoe before the photo array was presented to them but after the photos appeared in the newspaper, the answer to this question would be different. Under those circumstances, there would be a strong argument that the Clarks were recalling the men from their appearance in the newspaper rather than from the crime committed in their home. Those, however, are not the facts and the subsequent photo array, which did nothing but satisfy a law enforcement procedure, was immaterial to the actual identification by the Clarks.

2. Weight of the evidence
¶ 14. In reviewing a claim that a verdict is against the overwhelming weight of the evidence, we look at the evidence in a light most favorable to the verdict. Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983). We reverse only where the overwhelming weight of the evidence in this light is such that permitting it to stand would work an unconscionable injustice. Id.
¶ 15. Although listed in the section of their briefs addressing the identification procedures, Johnson and Bledsoe list a number of reasons why the identifications made by the Clarks should not be trusted, arguments which properly belong under the weight of the evidence analysis. Specifically, the appellants argue that Mr. Clark never positively identified Johnson; that he never looked closely enough at the third man alleged to be Bledsoe to make a positive identification; that Mrs. Clark's vision is too poor for her to make a viable identification; that Mrs. Clark was unable to identify the appellants in the photo array when shown to her on the witness stand; that the original description of the perpetrators lacked sufficient detail to substantiate a positive identification; and that a number of witnesses testified that Bledsoe sported a beard and braided hair during the summer of 2001 while Mr. Clark claimed Bledsoe was clean-shaven and did not wear braids. These are all challenges to the credibility of the witnesses. In addition, Bledsoe provided an alibi witness. He claimed he spent the entire evening and night of June 15, 2001, with his girlfriend at a motel. The girlfriend, Tiffany Parker, testified to this, as well.
¶ 16. Whatever contradictory or equivocal statements may have been made, the value of the statements is to be determined by the jury. The weight and worth of any witness's testimony is a matter left to the jury. Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980). We are to review the evidence that supports the verdict, not the evidence which could point in the opposite direction, and determine whether it is of sufficient quality to sustain the guilty verdict. We do not substitute our factual findings for that of the jury.
¶ 17. The jury obviously believed Mr. and Mrs. Clark. Bledsoe and Johnson had ample opportunity to attempt to impeach their testimony and did so with great vigor, according to the transcript. Deciding whether the Clarks were believable is the jury's duty. The jury just as clearly disbelieved Bledsoe's alibi witness. This was not an unreasonable conclusion considering neither she nor Bledsoe informed anyone *70 of their supposed motel tryst until two weeks before trial. Likewise, the jury did not believe or found unimportant the witnesses who testified as to Bledsoe's appearance in the summer of 2001. Neither of those courses was unreasonable as Mr. Clark, upon identifying Bledsoe for the very first time, noted that he had changed his appearance, specifically his hair. We find no fault with the jury's conclusion.

3. Denial of continuance
¶ 18. A motion for a continuance was made by the appellants the day before trial on the basis of a new witness whose statement required further investigation; the need for time to obtain an expert in the field of mistaken identification; and the necessity of having the suppression hearing transcript before trial in order to prepare for cross-examination of the Clarks. The court did order the transcript be made available as soon as possible but otherwise denied the motion, specifically finding that no new evidence had come to light during the suppression hearing that warranted a delay.
¶ 19. The new witness, Sharon Clark, was an inmate at the same jail where Bledsoe and Johnson were housed. At some point following the suppression hearing, Sharon Clark told defense counsel that she had been approached by a man named Steen a few days after the robbery and Steen offered to sell her jewelry and a gun. Sharon Clark also stated that there were people in another town who were aware of the real identity of the robbers. Counsel requested the continuance in part based upon this new statement, asking for time to further investigate and find these "other people" with pertinent information. The court found that Sharon Clark was available to testify and she could repeat her statement on the stand.
¶ 20. The decision to grant or deny a motion for continuance is entrusted to the sound discretion of the trial court. Coleman v. State, 697 So.2d 777, 780 (Miss. 1997). We reverse such decisions only to prevent a manifest injustice. Id. In instances such as those claimed here, the need to locate and produce witnesses, statute provides that the application for a continuance must include the names and addresses of the absent witnesses and what facts the witness is expected to provide. Miss.Code Ann. § 99-15-29 (Rev.2000). Johnson and Bledsoe did not name witnesses or state what facts were peculiarly within the unnamed witnesses' knowledge. They admit they did not know of any particular witnesses, they hoped to investigate further to find the people Sharon Clark alluded to in her statement to counsel. What the appellants were attempting to do was go on the proverbial fishing expeditionunnamed and unknown individuals somewhere may have pertinent information. Under these circumstances, the motion for a continuance was properly denied. Cunningham v. State, 828 So.2d 208, 216 (¶ ¶ 34, 36) (Miss.Ct.App.2002). We find no injustice to the appellants here, particularly in light of the fact that Sharon Clark's first statement upon taking the stand at trial was to admit she had lied and recant her entire statement made to defense counsel.
¶ 21. Likewise, denial of the motion for the purpose of obtaining an expert on misidentifications was not an abuse of discretion. Both defendants had known for months that the basis of the State's case rested upon the identifications by the Clarks. Although it is expressed in the brief to this court that the appellants "naively believed that once the Clarks saw them in the courtroom they would realize they were mistaken," such a belief does *71 not justify failing to prepare until the day before trial to meet the State's case.
¶ 22. This assignment of error is without merit.

4. Exclusion of testimony
¶ 23. Finally, Bledsoe and Johnson complain of the exclusion of testimony by Elenor Hubbard. Ms. Hubbard was the mother of Jeffrey Hubbard, the third man indicted for the robbery of the Clarks and whose own criminal case had been severed from that of Johnson and Bledsoe. Ms. Hubbard intended to testify that her son suffered from significant mental illness and was at her home the night of the robbery. Bledsoe and Johnson intended to utilize this testimony to cast doubt upon the identificationsthe Clarks had identified Hubbard along with Bledsoe and Johnson but if Hubbard was not there, then it is more likely the Clarks were incorrect in their identification of Johnson and Bledsoe. The State objected to the testimony as violating the rules regarding notice of alibi witnesses and as irrelevant. The trial court disallowed the testimony without stating upon which ground it found the testimony objectionable so we must assume both grounds were found sustainable.
¶ 24. The relevance and admission or exclusion of evidence is also a matter of discretion for the trial court which will be reversed only for an abuse of that discretion which results in prejudice to a party. Shearer v. State, 423 So.2d 824, 827 (Miss.1982).
¶ 25. The testimony proffered did not implicate the rule requiring that notice of an alibi witness be given to the State in advance of trial. Ms. Hubbard was not attempting to provide an alibi for either Johnson or Bledsoe but apparently for her son, Jeffrey Hubbard, who was not on trial. We do not find the trial court abused its discretion in ruling the evidence irrelevant. Jeffrey Hubbard's whereabouts as well as his mental capacity is certainly relevant to his defense but not to that of Johnson and Bledsoe. The appellants were attempting to bootstrap their own innocence to that of a third party who did not even appear at trial.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF CALHOUN COUNTY OF CONVICTION OF ARNOLD JEFFREY JOHNSON OF ARMED ROBBERY AND SENTENCE OF THIRTY-FIVE YEARS, AND LESTER BLEDSOE OF ARMED ROBBERY AND SENTENCE OF THIRTY-FIVE YEARS AS AN HABITUAL OFFENDER, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO CALHOUN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.