941 So.2d 846 (2006)
Kenneth Dewayne CARTER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01361-COA.
Court of Appeals of Mississippi.
May 9, 2006.
Rehearing Denied August 15, 2006.
Certiorari Denied November 2, 2006.
*848 Kenneth Dewayne Carter, Appellant, pro se.
Thomas Perry Setser, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On May 6, 2003, Kenneth Dewayne Carter was indicted by the grand jury of Warren County for armed robbery, carrying a concealed weapon as a convicted felon, simple assault on a law enforcement officer and escape from confinement. On June 3, 2003, Carter sought a psychiatric evaluation; however, the court denied the motion the next day.
¶ 2. On the first day of trial, Carter indicated to the court that he desired to represent himself. The court conducted a hearing in chambers regarding Carter's competency and found that Carter was, indeed, competent. The court instructed Carter's appointed counsel, Josie Hudson, to assist Carter in the event Carter requested assistance.
¶ 3. At the close of the State's case, Carter moved for a directed verdict on all counts. The court granted the directed verdict on the charge of escaping while in police custody but denied the motion regarding *849 the other charges. The jury returned a not guilty verdict on the simple assault charge, but convicted Carter of armed robbery and carrying a concealed weapon as a convicted felon. Carter was sentenced to serve two concurrent life sentences in the custody of the Mississippi Department of Corrections.
¶ 4. It is from this conviction that Carter appeals, with Thomas Setser as appointed appellate counsel. In conformity with our supreme court's recent ruling in Lindsey v. State, 939 So.2d 743 (Miss.2005), Setser filed a brief stating that he found no arguable issues supporting Carter's appeal. Setser further stated that he arrived at this conclusion after reviewing the record and examining the reasons and circumstances surrounding the arrest; any possible violation of Carter's right to counsel; the entire trial transcript including all exhibits, jury instructions and rulings of the trial court; possible prosecutorial misconduct; and the application of the law in sentencing Carter.
¶ 5. Carter filed a brief on his own behalf, arguing the following assignments of error: (1) that he received ineffective assistance of trial counsel; (2) that he was "unconstitutionally deprived of his qualified right to counsel of his choice;" (3) that he was denied a fair hearing on his objections to counsel; (4) that the court failed to elicit a proper waiver of counsel; (5) that the trial court improperly denied his motion for a continuance; and (6) that the State failed to prove the charge of possession of a firearm by a convicted felon.
¶ 6. Finding no merit to these issues, we affirm.

FACTS
¶ 7. On January 22, 2003, Carter walked into the Payless Shoe Store on Clay Street in Vicksburg, pulled out a gun, and demanded that Retha Clark, a store employee, remove the money from the register and place it in a box. Cynthia Batchelor was shopping in the store at the time and called the police on her cellular telephone. Linda Lewis was also working that day, and she helped Clark open the cash register. Once the register was opened, Lewis removed the drawer containing the cash and handed the drawer to Carter. Carter grabbed the money himself and concealed it in a shoe box. Edric Cooper also observed the robbery from across the street and called the police for assistance.
¶ 8. Before Carter could leave, Sergeants Adarryll Dent and William Combs arrived and entered the store, approaching Carter from behind. When Carter realized the police were in the store, he dropped his weapon and screamed, "Y'all got me, y'all got me!" The officers handcuffed Carter and instructed him to lie down on the floor. Carter remained on the floor for a moment, then he suddenly jumped to his feet and ran to the door. Sergeant Dent tackled Carter, and they fell into the store window. Carter kicked Sergeant Dent while the other officers attempted to subdue him. After a brief struggle, Carter was escorted to the police station. En route to the station, Carter again attempted to escape by kicking out the rear window frame of the squad car. Officer Dent, who was driving Carter, stopped the vehicle and called for backup. When backup arrived the officers restrained Carter's legs and transported him to the station.
I. WAS CARTER DENIED EFFECTIVE ASSISTANCE OF COUNSEL?
¶ 9. For a defendant to prevail on a claim of ineffective assistance of counsel, he must prove (1) that his counsel's performance was deficient and (2) that he was prejudiced by the deficient performance. *850 Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel is presumed competent. Woodward v. State, 843 So.2d 1, 7 (¶ 14) (Miss.2003). "In order to overcome this presumption, the appellant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Phinisee v. State, 864 So.2d 988, 990 (¶ 9) (Miss.Ct.App.2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
¶ 10. Carter argues that his trial counsel failed to investigate, failed to seek defense witnesses such as a psychiatrist, and failed to meet with him and otherwise prepare the case for trial. Carter points out that Hudson was appointed as counsel on April 21, 2003, he was indicted on May 6 and the trial was held on June 16. Carter argues that Hudson failed to acquire and review the store's security tape, which could possibly show a different scenario from that presented by the witnesses at trial. Carter finally argues that Hudson had a conflict of interest which prevented her from zealously and effectively representing him. The State argues that Carter has failed to show any deficiency in Hudson's representation and that Carter has failed to show he suffered any prejudice from the alleged malfeasance.
¶ 11. Carter's complaints are conclusory, vague and unsupported by the record. Carter fails to indicate which witnesses Hudson neglected to interview and how such a failure prejudiced his defense. Likewise, Carter simply states that Hudson had a conflict of interest and offers nothing in support of his assertion. "[P]rejudice is presumed only if the defendant demonstrates that counsel `actively represented conflicting interests' and that `an actual conflict of interest adversely affected his lawyer's performance.'" Sharp v. State, 786 So.2d 372, 382 (¶ 24) (Miss. 2001) (quoting Smith v. State, 666 So.2d 810, 812-13 (Miss.1995)). Carter has failed to show Hudson's alleged conflict of interest, and he has failed to show any adverse effect on his lawyer's performance. As such, this argument is without merit.
¶ 12. Regarding counsel's failure to secure a psychiatric evaluation, defense counsel sought an evaluation, and the trial court denied the motion. The record does not indicate that Carter was incompetent to stand trial, nor does the record indicate that Carter had a history of mental illness. In short, this argument rests on nothing more than Carter's assertion that he was entitled to an evaluation. On appeal, this Court must limit our inquiry to facts contained in the record and not upon mere assertions in the briefs. Colenburg v. State, 735 So.2d 1099, 1102 (¶ 8) (Miss.Ct. App.1999) (citing Parham v. State, 229 So.2d 582, 583 (Miss.1969)). As such, these arguments are without merit.
¶ 13. Regarding Hudson's alleged failure to investigate a security tape, the record reflects that the surveillance tape and security photographs were tendered to Hudson during discovery. Nothing in the record indicates that the tape would show anything to contradict the accounts of the two Payless employees, the customer, the witness who observed the crime from across the street, and the responding officers.
¶ 14. Carter has wholly failed to show any deficiency in Hudson's representation; therefore, this issue is without merit.
II. WAS CARTER UNCONSTITUTIONALLY DEPRIVED OF THE COUNSEL OF HIS CHOICE?
¶ 15. Carter next argues that he was unconstitutionally deprived of the attorney *851 of his choice. Carter argues that the court "summarily and arbitrarily denied the motion for substitution of counsel without utilizing proper discretion, which was prejudicial to [Carter] because it eliminated his chance to change counsel for good cause."
¶ 16. Carter is mistaken in his review of the record, as there was no motion for the substitution of counsel prior to trial. During the motion for a continuance, Hudson stated that Carter had just informed her that his family was in the process of trying to hire an attorney to represent him. The court denied the motion for a continuance and told Carter he was free to hire counsel if he so desired, but the trial was set for Monday.
¶ 17. Carter argues that under Watson v. State, 196 So.2d 893 (Miss.1967), he was entitled to a hearing regarding his constitutional right to representation. Carter's reliance is misplaced. In Watson, the defendant was appointed counsel after representing to the court that he was indigent. He was tried and convicted of burglary, and the conviction was reversed and remanded by the supreme court due to a defect in the indictment.
¶ 18. On remand, the trial court ascertained that Watson owned certain land, and, therefore, could not be considered indigent. The case was set for trial, Watson appeared and requested a continuance, and the continuance was denied. Watson was convicted and appealed. The supreme court reversed, finding that the record was incomplete, as it did not indicate what measures, if any, Watson was able to take to secure counsel in the forty-eight hours between his arraignment and trial. Additionally, because the record was incomplete, the supreme court ruled that it was unable to determine whether the court abused its discretion in failing to grant Watson additional time to secure counsel. Id. at 896.
¶ 19. Watson lost his appointed representation because he was no longer considered indigent; however, this contrasts with Carter's predicament because Carter was continuously represented by counsel until he petitioned to represent himself. Even then, the court granted him advisory counsel who assisted him at trial. See Metcalf v. State, 629 So.2d 558, 562 (Miss. 1993). Carter did not go unrepresented, and the record does not indicate that Carter requested a substitution of counsel prior to or during the motion hearing. Indeed, when the court denied Carter's motion for a continuance, Carter's only response was, "Can we get another judge, Your Honor? I want a motion for a new judge. I want to go in front of Judge Patrick."
¶ 20. As there was no motion for the substitution of counsel, we review the court's denial of the motion for a continuance, assuming, arguendo, that Carter requested the continuance for the purpose of securing new representation. The denial of a last minute continuance to retain new counsel is within the trial court's discretion. Nelson v. State, 850 So.2d 201, 204 (¶ 7) (Miss.Ct.App.2003). To succeed in this claim on appeal, the defendant must show an abuse of the court's discretion and that the abuse actually worked an injustice in his case. Id. Carter has failed to meet both elements, as he only speculates that "there's a possibility that counsel may [have] needed a brief continuance to prepare for trial." This issue is without merit.
¶ 21. Although the arguments advanced by Carter refer to his representation prior to and during trial, we do note that after trial and prior to sentencing, Carter sought to have another attorney represent him, stating, "Your Honor, if I may bring it to your attention, I might seek your *852 approval if I might have another attorney represent me at the sentencing part of this case." The court denied the motion. We find no abuse of discretion in denying this motion, as Carter has failed to address this motion in his brief and as the record does not support an inference that the court abused its discretion in denying the motion.
III. WAS CARTER IMPROPERLY DENIED A FAIR HEARING REGARDING HIS OBJECTIONS TO HIS ATTORNEY?
¶ 22. The record does not indicate, and Carter fails to identify where or when, objections to his attorney were raised before the trial court. As discussed in Section II of this opinion, Carter's only response to the court's denial of the motion for a continuance was to request a transfer to another judge. We note that it is the appellant's duty "to point to specific factual issues supporting his various claims for relief, to be accompanied by citations to the record showing where the evidence relating to such issues may be found and to citations to legal authorities, where available, to support his contentions." Moody v. State, 838 So.2d 324, 338 (¶ 57) (Miss.Ct.App.2002). Without such support for his arguments, this Court cannot adequately determine whether this issue has merit. As such, we decline to address it.
IV. DID CARTER VALIDLY WAIVE HIS RIGHT TO COUNSEL?
¶ 23. Carter argues that he did not validly waive his right to counsel as "trial counsel was ineffective and the trial court would not allow substitution of counsel." This argument rests upon Carter's assertion that the court improperly denied his motion to substitute counsel prior to trial. As discussed in Section II of this opinion, such a motion was never brought before the trial court. Notwithstanding the insufficiency of his argument, we address the validity of his waiver and his self-representation.
¶ 24. The right of a defendant to conduct his own defense is not absolute, existing only where the waiver of counsel can be made in a knowing, intelligent and voluntary manner. Howard v. State, 701 So.2d 274, 279 (Miss.1997) (citing Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). We review a court's decision to allow pro se representation for an abuse of discretion. Metcalf, 629 So.2d at 566.
¶ 25. The trial court complied with Rule 8.05 of the Uniform Rules of Circuit and County Court, informing Carter that he had the right to have an attorney represent him and that if he could not afford one, the State would appoint an attorney to defend or assist in his defense; that Carter had the right to conduct a defense; that the court would not relax the complex rules of the court, including evidentiary rules and rules of procedure and protocol, and that Carter must conform to the same rules as an attorney would; that without legal advice his ability to defend himself would be hampered; and that proceeding without an attorney usually increases the likelihood of an unfavorable outcome for the defendant.
¶ 26. We note that Carter did not proceed strictly pro se, as he was assisted by Hudson as well as by Al Rhodes, an attorney who participated in the trial at Hudson's request. These attorneys argued objections, conferred with Carter, advised Carter, and questioned witnesses. Additionally, while Carter handled his own opening statement, Rhodes conducted Carter's closing arguments. This assisted representation makes Carter's involuntariness claim more suspect, as he received *853 more professional assistance than he requested. See Metcalf, 629 So.2d at 566. We find no abuse of discretion in allowing Carter to proceed with the assistance of Hudson and Rhodes. This issue is without merit.
V. DID THE COURT IMPROPERLY DENY CARTER'S MOTION FOR A CONTINUANCE?
¶ 27. The denial of a motion for a continuance is reviewed for an abuse of discretion, and the denial will not provide grounds for reversal unless "shown to have resulted in manifest injustice." Payton v. State, 897 So.2d 921, 931 (¶ 11) (Miss.2003). Carter argues that the court abused its discretion as his attorney was ill-prepared for trial. Carter cites Hudson's argument to the court that she needed additional time to investigate and prepare a proper defense in addition to Hudson's statement that she was having difficulty communicating with Carter. The court noted that Hudson had been appointed in April and that Carter was obligated to cooperate with counsel if he desired representation. We agree that Carter was obligated to cooperate with Hudson in the preparation of his defense. See, e.g., Tolliver v. State, 802 So.2d 125, 127 (¶ 9) (Miss.Ct.App.2001) (a defendant's claim to ineffective assistance of counsel cannot be substantiated by his refusal to cooperate with counsel).
¶ 28. Carter has failed to indicate what further investigation was needed and what additional witnesses would have been called, and we are unpersuaded by his generic argument that further investigation was necessary. We cannot find an abuse of discretion in the court's decision to prevent a fishing expedition seeking unknown and unidentified witnesses. See Johnson v. State, 872 So.2d 65, 70 (¶ 20) (Miss.Ct.App.2004).
¶ 29. Carter has failed to show that the court abused its discretion and that the denial resulted in a manifest injustice; therefore, this issue is without merit.
VI. DID THE STATE IMPROPERLY PROVE THE CHARGE OF POSSESSION OF A FIREARM BY A CONVICTED FELON?
¶ 30. Citing to Sanders v. State, 825 So.2d 53 (Miss.Ct.App.2002), Carter attacks the sufficiency of the evidence, arguing that the State offered no stipulation regarding his prior convictions or no other substantial evidence supporting his prior convictions. Carter is correct to the extent that the State did not offer a stipulation regarding his prior convictions, because the State introduced into evidence an order accepting Carter's guilty plea to a charge of robbery and sentencing him to serve seven years in the custody of the Mississippi Department of Corrections for that crime.
¶ 31. We note that when the State moved to admit the document, Carter's attorney began to assail the document's authenticity, to which Carter responded, "Your honor, the State may present the document. I agree to it. No objection." The document was then admitted into evidence without objection. It is well-settled law that failure to object at trial waives the objection on appeal. Bounds v. State, 852 So.2d 51, 55 (¶ 10) (Miss.Ct.App.2002). As Carter has waived his objection to the admissibility of the document, we consider the sufficiency of the State's evidence.
¶ 32. In reviewing the sufficiency of the evidence, our supreme court has held,
The critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances *854 that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."
Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). On appeal, we consider the evidence in a light most favorable to the State. Id. at (¶ 17).
¶ 33. To successfully convict Carter of this charge, the State must prove (1) that Carter had been convicted of a felony under the laws of this state or any other state and (2) that he possessed a firearm. See Miss.Code Ann. § 97-37-5 (Rev.2000); see also Estes v. State, 782 So.2d 1244, 1254-55 (¶ 27) (Miss.Ct.App.2000). When a prior conviction is an element of a crime, the State is authorized to introduce evidence of the conviction and is not limited in its method of proof. Evans v. State, 802 So.2d 137, 141 (¶ 9) (Miss.Ct.App.2001).
¶ 34. There was sufficient evidence to convict Carter of possession of a firearm as a convicted felon, as the State introduced evidence that Carter had previously pled guilty to burglary, and five witnesses testified that Carter brandished a gun which was partially concealed in a shoe box during the robbery of the Payless Shoe Store. As such, this issue is without merit.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF COUNT I, ARMED ROBBERY AS A VIOLENT HABITUAL OFFENDER AND SENTENCE OF LIFE AND COUNT II, CARRYING A CONCEALED WEAPON AND SENTENCE OF LIFE TO RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.