# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01464-COA

**JERRY PAGE A/K/A JERRY ABRAM A/K/A**                **APPELLANT**
**JERRY ABRAMS**

**v.**

**STATE OF MISSISSIPPI**                                     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/26/2016 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/19/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., WILSON AND TINDELL, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     Following a jury trial in the Marion County Circuit Court, Jerry Page was convicted of first-degree murder, arson, possession of a firearm by a convicted felon, and simple assault on a law enforcement officer.  The circuit court sentenced Page, as a violent habitual offender, to four consecutive terms of life imprisonment without the possibility of parole.

¶2.     Through appellate counsel, Page argues that his convictions should be reversed for five reasons: (1) the trial judge erred by admitting an unredacted copy of Page's New Jersey Superior Court criminal case file, which the State used to establish that Page was a convicted

felon, an essential element of the felon-in-possession charge; (2) Page's trial counsel provided ineffective assistance by refusing to stipulate that Page was a convicted felon, which led to the admission of the New Jersey court file; (3) the trial judge erred by allowing the jury to hear the audio of a witness's prior statement and by allowing the jurors to have a transcript of the statement while it was played; (4) the trial judge erred by limiting Page's cross-examination of a prosecution witness regarding the witness's criminal history; and (5) the cumulative prejudicial effect of these errors deprived Page of a fair trial. Page also filed a pro se brief that alleges additional errors. For the reasons discussed below, we find no reversible error and affirm Page's convictions and sentences.

### FACTS AND PROCEDURAL HISTORY

¶3. On Labor Day morning, September 1, 2014, a thoroughly burned, still smoldering pickup truck was found on East Reservoir Road in rural Marion County. A burned human body was in the bed of the truck. The truck was identified as a white Ford Ranger owned by Billy Paul Cooper. The body was identified as Billy Paul Cooper's son, Ryan Cooper.

¶4. Investigator Jamie Singley of the Marion County Sheriff's Department noticed a puddle of blood at the back of the truck and a trail of blood leading away from it. The trail led to another puddle of blood in the driveway of Jerry Page's residence on Goss-Bunkerhill Road. The blood trail then continued to James Kelly's home on nearby Expose Road.

¶5. Later that day, Singley was looking for Page when he saw a truck matching the description of Page's truck. Singley followed the truck to a gas station, and confirmed from a check of the license plate that it was Page's truck. Page parked at the gas station and exited

his truck, and Singley exited his car and approached Page. Singley showed Page his badge and stated that he wanted to talk. Page then ducked behind a corner of the building, out of Singley's sight, and Singley heard the "very familiar sound" of "the rack of a pistol." Singley took cover and drew his pistol, and he saw Page pointing a pistol in his direction. Page then fled on foot, and Singley pursued him. Still holding his pistol, Page motioned at Singley in a threatening manner, as if to say "come on." Singley decided to wait for backup before continuing his pursuit of Page.

¶6. Page was apprehended that evening on Expose Road. The arresting officers saw Page throw something into a ditch just before he was taken into custody, and the officers recovered a black semiautomatic pistol, a Lorcin .380, from the ditch. Multiple witnesses implicated Page in Cooper's murder, and Singley's investigation led him to conclude that Page shot Cooper and that Anthony Abram[1] helped Page move and burn Cooper's body. Page and Anthony Abram were indicted and tried together.

¶7. Alex Abram[2] testified that on August 31, 2014, he hosted a barbecue at his home on Expose Road. As the party wound down, Abram and David Holmes[3] walked to James Kelly's home, which was about a quarter of a mile away on Expose Road. As Alex Abram and Holmes approached Kelly's house, Abram heard people talking and arguing outside the house. Abram saw two white trucks, one of which he recognized as Page's truck. Alex

---

[1] Page was formerly known as Jerry Abram. Page and Anthony Abram are brothers.

[2] Alex Abram testified that he and Page are distant cousins.

[3] Holmes testified that he and Alex Abram are cousins.

3

Abram saw Page, Cooper, Anthony Abram, and Alex Garner outside the house. As Alex Abram and Holmes drew closer to Kelly's house, Alex Abram realized that Page and Cooper were arguing. Alex Abram saw Page with a gun, he "heard the gun cock," and then he and Holmes both turned and ran back toward his house.

¶8. Alex Abram testified that as he was running back to his house, he saw the two white trucks drive by, but he could not identify the drivers. The State was then allowed to refresh Abram's memory by playing the audio of his prior statement to law enforcement. The jurors listened to the audio and were provided with transcripts to follow along; however, neither the recording nor the transcript were admitted into evidence, and the transcripts were collected from the jurors immediately after the audio was played. His memory refreshed, Alex Abram testified that he could identify the drivers of the two trucks—Page was driving his own truck, and Anthony Abram was driving Cooper's truck.

¶9. Holmes similarly testified that he and Alex Abram walked to Kelly's house after the barbecue at Abram's house. As they approached Kelly's house, Holmes saw Page, Cooper, and Alex Garner engaged in conversation. Holmes did not see Anthony Abram. Holmes testified that "[w]hen [he] heard a gun cock, [he] turned and ran." He did not see the gun, but he heard a gunshot as he ran. Holmes acknowledged that he had been indicted for hindering prosecution in connection with Cooper's murder, but the State agreed to drop the charge in exchange for his truthful testimony against Page.

¶10. Garner testified that he rode with Cooper to Alex Abram's barbecue. He testified that Cooper argued with Page, Anthony Abram, Alex Abram, and Holmes. Cooper and Garner

4

then left the barbecue in Cooper's truck.  As they drove away, someone fired a gun in their direction.  Garner testified that he and Cooper drove to Kelly's house, and the other men followed in Page's truck and confronted Cooper again.  Anthony Abram put a gun to Cooper's head but put it down.  Page then walked up and shot Cooper in the face.  Garner testified that Holmes and Alex Abram walked away after the shooting.

¶11.    Garner testified that Anthony Abram put Cooper's body in the back of Cooper's truck.  Anthony Abram then drove off in Cooper's truck, and Page followed in his own truck.  Page returned about forty-five minutes later, and Garner gave him a gas can to help burn the blood in the driveway.  Garner also helped Page cover up blood with dirt.  Page then left.

¶12.    Garner testified that Page threatened that he would kill Garner and Garner's mother if Garner told anyone about the murder.  Garner testified that Page made these threats both on the night of the murder and later while they were both in jail awaiting trial.  Garner acknowledged that he had been indicted as an accessory after the fact to murder and for hindering prosecution.  Garner testified that in exchange for his truthful testimony against Page and Anthony Abram, the State had agreed to recommend that he receive a sentence of twenty years' imprisonment, with sixteen years suspended and four years to serve, as an accessory after the fact.

¶13.    A Deputy State Fire Marshal examined the burnt truck and testified that the fire was not set accidentally or caused by an electrical incident.  He determined that the fire started in the cab of the truck, but he could not determine the specific cause or source.  Expert witnesses established that blood found at Cooper's burned truck, at Page's house, at Kelly's

5

house, and at various points on the trail between those locations was Cooper's blood. The bullet that killed Cooper did not match the .380 Lorcin pistol that Page tossed into a ditch just before his arrest. The murder weapon was never recovered.

¶14. After the State rested, Anthony Abram called only one witness, Hilda Patton, who testified that Anthony Abram was a friend, that he lived at her house in August 2014, and that he was at her house on the night of the murder. Patton testified that she disclosed this information to Anthony Abram's attorney about two weeks before trial. She acknowledged that she had not told anyone else about this during the two years that Anthony Abram had been in jail pending trial. Page then recalled Singley for the purpose of having the transcript of Singley's interview of Garner read to the jury. Page then rested and the State finally rested. The jury found Page guilty on all four charges against him—first-degree murder, arson, possession of a firearm by a convicted felon, and simple assault on a law enforcement officer—and found Anthony Abram guilty as an accessory after the fact to first-degree murder.[4] The court sentenced Page, as a violent habitual offender, to four consecutive terms of life imprisonment. *See* Miss. Code Ann. § 99-19-83 (Rev. 2015). Page filed a motion for judgment notwithstanding the verdict or a new trial, which the circuit court denied, and a notice of appeal.

**ANALYSIS**

¶15. As noted above, Page's appointed appellate counsel filed a brief that raises five issues. *See supra* ¶2. Page's supplemental pro se brief raises five additional issues. We address

---

[4] Anthony Abram's appeal is also pending before this Court. *See Abram v. State*, No. 2016-KA-01396-COA.

these issues in turn.

**I.      The trial judge did not abuse his discretion by admitting certified records of Page's prior convictions.**

¶16.    Prior to trial, the State indicated that it intended to introduce evidence of Page's prior felony convictions to prove the charge of illegal possession of a firearm.  The State offered that it would not seek to introduce such evidence if Page stipulated that he was a prior convicted felon.  Page's attorney responded, "We're not stipulating to anything . . . ."

¶17.    Thus, at trial, the State offered a certified court file that included more than fifty pages related to Page's prior convictions in New Jersey.  The file included judgments showing convictions for sexual assault, burglary, attempted burglary, robbery, armed robbery, resisting arrest, and possession of weapons for an unlawful purpose.  It also included documents commenting on Page's unsuitability for probation based on his extensive criminal history, violent behavior, and the likelihood that he would re-offend; documents showing additional charges that were dismissed pursuant to a plea bargain (a weapons charge, assault, and assault with the intent to kill), a charge that ended in a mistrial (aggravated assault), and charges on which Page was acquitted (various weapons charges); documents describing some of the underlying facts of some of Page's prior offenses; mug shots and fingerprints; and miscellaneous other documents.  The defense objected and argued that everything in the file should be redacted other than the judgment showing Page's first conviction for sexual assault, which was the only prior conviction identified in the indictment.  The trial judge overruled the objection, stating that he was not going to "sanitize" the certified New Jersey records and that such extensive redactions would risk "confusing" the jury.

7

¶18. On appeal, Page argues that the trial court erred and that most of the file should have been redacted or excluded pursuant to Mississippi Rules of Evidence 401, 403, and 404(b). We review a trial court's admission of evidence for abuse of discretion. *Chaupette v. State*, 136 So. 3d 1041, 1045 (¶7) (Miss. 2014). "We give great deference to the discretion of the trial judge, and unless we conclude that the [decision] was arbitrary and clearly erroneous, amounting to an abuse of discretion, the trial judge's decision will stand." *Id.* (internal quotation marks and brackets omitted). "Moreover, we may reverse . . . only if the admission or exclusion of evidence results in prejudice and harm or adversely affects a substantial right of a party." *Id.* (comma and internal quotation mark omitted). In this case, we find no abuse of discretion.

¶19. "[W]hen pursuing a felon-in-possession charge, if the defendant does not offer to stipulate to his status as a prior-convicted felon, 'the prosecution is entitled to prove its case by evidence of its own choice.'" *Minor v. State*, 89 So. 3d 710, 716 (¶18) (Miss. Ct. App. 2012) (quoting *Esco v. State*, 9 So. 3d 1156, 1165 (¶37) (Miss. Ct. App. 2008); *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997)) (brackets omitted). "When a prior conviction is an element of a crime, the State is authorized to introduce evidence of the conviction and is not limited in its method of proof." *Carter v. State*, 941 So. 2d 846, 854 (¶33) (Miss. Ct. App. 2006) (citing *Evans v. State*, 802 So. 2d 137, 141 (¶9) (Miss. Ct. App. 2001)). Here, Page expressly refused to stipulate to his status as a prior-convicted felon. Therefore, the State was "entitled to prove its case by evidence of its own choice." We cannot say that the trial judge abused his discretion by overruling Page's request for extensive redactions of the

8

certified records that the State received from New Jersey. Page's earlier convictions, including the sexual assault conviction identified in the indictment in this case, were under the name Jerry Abram rather than Jerry Page. The admission of the complete file served to make clear that Jerry Abram and Jerry Page were the same person. Moreover, the prosecutors did not even mention Page's additional convictions or charges. Rather, in closing argument, the State only briefly mentioned Page's one prior conviction for sexual assault, and it did so only to address the relevant element of the felony-in-possession charge.

¶20. Generally speaking, a defendant in a felon-in-possession case is entitled to stipulate to his status as a prior-convicted felon, and he can thereby prevent the introduction of evidence of the specific nature of his prior crimes. *See Williams v. State*, 991 So. 2d 593, 605-06 (¶40) (Miss. 2008). However, the defendant cannot refuse to so stipulate—as Page refused in this case—and then dictate what evidence the State may use to meet its burden of proof. We find no abuse of discretion in the trial judge's ruling in this case.

## II. The record does not establish that Page received ineffective assistance of counsel at trial.

¶21. Page also argues that trial counsel's "failure to offer a stipulation [to his prior felony convictions] is per se ineffective assistance of counsel." However, we generally decline to address ineffective assistance of counsel claims on direct appeal. *See Pinter v. State*, 221 So. 3d 378, 386 (¶19) (Miss. Ct. App. 2017). "We will reach the merits on an ineffective assistance claim only where '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding.'" *Collins v. State*, 221 So. 3d 366, 372 (¶19) (Miss. Ct.

9

App. 2016) (quoting *Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003)). Here, the record does not affirmatively show that Page's constitutional rights were violated, nor does the State stipulate that the record is adequate to make such a determination. Page may raise the issue in a properly filed motion for post-conviction relief. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015) (providing that when the petitioner's conviction and sentence have been affirmed on direct appeal, the petitioner must obtain leave of the Supreme Court before filing a motion for post-conviction relief in the circuit court).

¶22. Although we do not reach the merits of Page's ineffective assistance claim, we do note that the specific decision to refuse to stipulate to a prior felony conviction "has been found to be a reasonable trial strategy." *Collins v. State*, 221 So. 3d 366, 372-73 (¶21) (Miss. Ct. App. 2016), *cert. denied*, 220 So. 3d 975 (Miss. 2017). "This Court has stated that stipulating to the prior felony could give 'the jury the impression that the defense had some reason to hide facts of the prior cases from them.'" *Id.* (quoting *Williams v. State*, 819 So. 2d 532, 538 (¶18) (Miss. Ct. App. 2002)) (brackets omitted). The decision not to stipulate not only avoids that risk but also puts the State to its burden of proof on each element of the crime. Thus, the decision is not "per se ineffective assistance of counsel," as Page argues. With that observation, we deny this claim without prejudice to Page's ability to raise the issue in a post-conviction proceeding.

### III. The State's use of a prior statement to refresh a witness's memory was not reversible error.

¶23. Page next argues that the trial court erred by allowing the State to use the audio recording and a transcript of Alex Abram's statement to law enforcement as an improper

10

means of "bolstering" Abram's testimony.

¶24.   As discussed above, the State asked to play part of the audio of Alex Abram's prior statement to law enforcement after Abram testified that he did not see who was driving the two white trucks that drove away from James Kelly's house just after the murder. *See supra* ¶8. The State argued that the audio could "refresh" Abram's memory. Counsel for Page and Anthony Abram objected, but they did not object to the use of the recording per se. Rather, Page's attorney complained that the State was "cherry picking" by seeking to play only part of the recording, and Anthony Abram's attorney then insisted that the entire recording should be played. The trial judge gave the defense what it wanted and allowed the jury to hear the entire recorded interview, which lasted about nine minutes. The judge also ruled that the jurors should be given transcripts of the interview to follow along. Counsel for both defendants objected to the court's decision to give the jurors transcripts of the recording; however, the trial judge overruled their objections. The transcripts were collected from the jurors after the recording was played.

¶25.   We first conclude that Page waived any objection to the use of the audio recording. Page did not object to the use of the recording per se; rather, the defendants seemed to agree that the jury should hear the *entire* interview. *See* M.R.E. 612(b) (describing an adverse party's options if a witness uses a recording to refresh the witness's memory);[5] *Galloway v.*

---

[5] Rule 612 specifically contemplates that a witness may "use[] a writing, *recording*, or object to refresh [his or her] memory . . . while testifying." M.R.E. 612(a) (emphasis added); *see* M.R.E. 612, advisory committee's note ("Effective August 12, 1992, Rule 612 was amended to allow recordings and objects to be used . . . ."). In general, if an audio recording is to be used, and the recording is not otherwise admissible, the witness should listen to the recording outside the presence of the jury. *See* 5 Clifford S. Fishman & Anne

11

*State*, 122 So. 3d 614, 645 (¶87) (Miss. 2013) ("A defendant cannot complain on appeal of alleged errors [that he] invited or induced . . . .").

¶26.    Page did object to the trial judge's decision to allow the jurors to have transcripts of the interview while it was played. However, the Supreme Court has approved of a "transcript being provided merely for [jurors'] convenience to follow [a] tape [recording]." *Coleman v. State*, 697 So. 2d 777, 785 (Miss. 1997) (citing *Dye v. State*, 498 So. 2d 343, 344 (Miss. 1986); *U.S. v. Onori*, 535 F.2d 938, 946-49 (5th Cir. 1976)). In *Coleman*, the judge told the jurors that the transcript "was only to be used as a guide" and that they should "pay attention to the tape" for any discrepancies. *Id.* In addition, "[t]he transcripts were retrieved from the jury, so that they weren't allowed to review [the transcript] during deliberations." *Id.* "Under [those] circumstances, the use of the transcripts was not error." *Id.*

¶27.    In this case, the trial judge similarly told to the jurors that the transcript was to be used as an aid,[6] although the judge did not expressly state that it was only to be used as a guide. In addition, as in *Coleman*, the judge cautioned the jurors that the transcripts would be taken up at the end of the recording, so during deliberations each juror "would have to use [his or her] best memory as to what [Abram] said." Under the circumstances, as in *Coleman*, the

T. McKenna, *Jones on Evidence: Civil and Criminal* § 32:36 (7th ed. 1992) (citing *Brock v. Commonwealth*, 947 S.W.2d 24, 31 (Ky. 1997)); *accord J.G. v. State*, 213 So. 3d 936, 937 (Fla. Dist. Ct. App. 2017). Here, however, the defendants insisted that the jury hear the entire interview.

[6] On appeal, Page complains that as the transcripts were being distributed, the trial judge compared the transcript to a "hymn book." Page asserts that this gave the transcript "a virtual imprimatur of Gospel truth." We disagree. It is clear from the context of the trial judge's comment that it was intended only as an explanation of the transcript's purpose, not a voucher for the truthfulness of anything that Alex Abram said.

trial judge committed no abuse of discretion.

¶28. In summary, Page waived any objection to the playing of the interview, and it was not an abuse of discretion to allow the jurors to have transcripts. This issue is without merit.

> **IV. The limitation of Page's cross-examination of a prosecution witness was, at most, harmless error.**

¶29. At trial, Alex Garner admitted on cross-examination that he was a convicted felon; however, when Page's trial counsel asked Garner to identify the crime of which he had been convicted, the judge sustained the State's objection. On appeal, Page argues that the judge's ruling was an abuse of his discretion.

¶30. "Given the constitutional right of a criminal defendant to confront those testifying against him, [the Mississippi Supreme Court has interpreted Mississippi Rule of Evidence] 609(a)(1) as allowing full impeachment of prosecution witnesses without the requirement of a balancing test, except in extreme situations such as where the prosecution witness has a prior conviction that is both highly inflammatory and completely unrelated to the charges pending against the accused." *White v. State*, 785 So. 2d 1059, 1062 (¶10) (Miss. 2001); *accord Reed v. State*, 191 So. 3d 134, 142 (¶23) (Miss. Ct. App. 2016). Under the Supreme Court's decision in *White*, "*full impeachment*" includes the right to cross-examine the witness about the witness's specific prior felony convictions. *White*, 785 So. 2d at 1062 (emphasis added); *see Jefferson v. State*, 818 So. 2d 1099, 1109-10 (¶¶24-28) (Miss. 2002). If the defendant were limited—as Page was in this case—to asking if the witness had been convicted of some unspecified felony, it would be unnecessary for the court to consider whether a specific prior conviction would be "highly inflammatory." *White*, 785 So. 2d at

13

1062. Thus, the defendant generally is entitled to cross-examine prosecution witnesses about their specific prior convictions. Accordingly, the trial court erred by limiting Page's further inquiry into Garner's specific prior felony convictions.[7]

¶31. Nonetheless, the trial court's ruling was not reversible error for two reasons. First, Page failed to make a proffer regarding Garner's prior felony conviction(s). Without knowing the nature of Garner's specific prior felony conviction(s), it is impossible for this Court to find that Page was prejudiced by the trial court's ruling limiting cross-examination to Garner's general status as a prior convicted felon. *See Turner v. State*, 732 So. 2d 937, 951 (¶55) (Miss. 1999) ("When a trial court rules so as to prevent certain testimony from being introduced, it is incumbent on the party to make a proffer of what the witness would have testified to or the point is waived for appellate review.").

¶32. Second, although no proffer was made, the State infers from statements made during a sidebar that Garner's prior conviction was for residential burglary. If that is the case, any error was harmless. In his testimony, Garner admitted that he was a prior convicted felon, that he was testifying pursuant to a plea bargain, and that he would plead guilty as an

---

[7] In *White*, the Supreme Court also made clear that the defendant is entitled to cross-examine a prosecution witness about prior felony convictions, even if the offenses do not involve any dishonesty or false statement. *See White*, 785 So. 2d at 1061 (¶¶4-6); *Reed*, 191 So. 3d at 143 (¶27). Therefore, the trial judge also erred to the extent that he limited Page's cross-examination because he concluded that the commission of a residential burglary was not relevant to Garner's "veracity." *See White*, 785 So. 2d at 1063 (¶12) (holding that the trial judge abused his discretion by refusing to allow cross-examination concerning a prior felony drug conviction); *Reed*, 191 So. 3d at 142 (¶24) (same as to prior convictions for grand larceny and cocaine possession). However, the trial judge properly prohibited Page from cross-examining Garner about prior arrests that did not result in convictions. *See Cassidy v. State*, 110 So. 3d 335, 340 (¶¶21-22) (Miss. Ct. App. 2013).

accessory after the fact to first-degree murder. Given these admissions, Garner's prior conviction for residential burglary would have had only the slightest marginal impeachment value, if any. Moreover, Page's trial counsel thoroughly cross-examined Garner, highlighting his plea agreement with the State. Accordingly, on the facts of this case, we find that any error was harmless. *See Jefferson*, 818 So. 2d at 1110 (¶28) (holding that the trial court's error in limiting cross-examination about a witness's prior conviction for selling cocaine was harmless given that the witness admitted during his testimony on cross-examination that he was a convicted felon).

### V. The trial court did not abuse its discretion by excluding defense witnesses as a sanction for discovery violations.

¶33. In his pro se brief, Page argues that the trial court erred by excluding witnesses who would have provided an alibi and/or "testified to knowing why the victim was killed [for reasons] having nothing to do with [Page]." Page argues that under former Rule 9.04 of the Uniform Rules of Circuit and County Court Practice (URCCC),[8] the trial court should not have excluded the witness but should have offered the State a continuance to interview the witnesses and prepare for their testimony. Page also argues that the witnesses' exclusion violated his right to compulsory process under the Sixth Amendment of the United States Constitution and article 3, section 26 of the Mississippi Constitution.

¶34. Page apparently disclosed the names of certain witnesses eleven days before trial;

---

[8] Effective July 1, 2017, Rule 17 of the new Mississippi Rules of Criminal Procedure replaced former URCCC Rule 9.04. However, Rule 9.04 applies to the conduct of Page's trial since it was in effect at the time of trial. The same is true of any other URCCC rules cited in this opinion.

however, Page apparently failed to disclose anything about the substance of the witnesses' prior statements or anticipated testimony. Rule 9.04(C)(1) required Page to disclose the names and addresses of all witnesses that he intended to call at trial, along with a copy of any written or recorded statement "and the substance of any oral statements made by such witness." URCCC 9.04(C)(1).[9] In addition, Rule 9.05 required Page to disclose the names and addresses of all alibi witnesses that he intended to call, together "the specific place or places at which [Page] claim[ed] to have been at the time of [Cooper's murder]." URCCC 9.05.[10] On the morning of trial, the State argued that Page had violated both rules because he had disclosed nothing other than the witnesses' names. The State asked the trial judge to exclude the witnesses' testimony based on Page's discovery violations. *See* URCCC 9.04(I) & 9.05; *McGregory*, 979 So. 2d at 17 (¶8); *Houston v. State*, 752 So. 2d 1044, 1045-47 (¶¶7-14) (Miss. Ct. App. 1999).

¶35.    In response to the State's argument, Page's counsel stated as follows:

> I don't know what they are to be quite frank. To be quite frank, when the investigator talked to them, we couldn't get much of anything out of them. My client gave me their names. I subpoenaed them to get them here so I can talk to them. My best guess is they're not going to be used, but I'm just grasping [at straws] to get -- to try to prepare some kind of defense to some aspect of this case.

Based on this response, the trial judge granted the State's motion to exclude the witnesses.

¶36.    We review the exclusion of witnesses as a sanction for discovery violations under the

---

[9] This requirement applied to Page because he requested and received reciprocal discovery from the State. *See* URCCC 9.04(C).

[10] This requirement applied to Page because the State made a written demand for a notice of intent to offer an alibi. *See* URCCC 9.05.

abuse of discretion standard. *McGregory v. State*, 979 So. 2d 12, 17 (¶7) (Miss. Ct. App. 2008). The trial court must not "disregard the 'fundamental character of the defendant's right to offer the testimony of witnesses in his favor.'" *Id.* at (¶8) (quoting *Coleman v. State*, 749 So. 2d 1003, 1009-10 (¶¶16-17) (Miss. 1999)). However, "[u]pon weighing all relevant factors in the case, unless there is clear error in judgment as to the sanctions imposed . . . , this Court will affirm the imposed sanction." *Id.* at (¶7).

¶37. Here, even on the morning of trial, Page's counsel was unable to state what the witnesses might say or whether any of them would attempt to provide an alibi. Under these circumstances, the trial judge did not abuse his discretion by excluding the witnesses as a sanction for Page's discovery violations. Moreover, trial counsel candidly admitted that the witnesses had provided little information to his investigator and probably would not be called, and the record contains no further proffer as to what the witnesses' testimony might have been. Thus, there is no support in the record for Page's pro se claim that he was prejudiced by the exclusion of the witnesses. This issue is without merit.[11] *See Davis v. State*, No. 2015-KA-01491-COA, 2017 WL 4386694, at *10-*12 (¶¶61-69) (Miss. Ct. App. Oct. 3, 2017) (rejecting a similarly unsubstantiated claim alleging error in the exclusion of defense witnesses), *cert. denied*, 2018 WL 2540527 (Miss. May 10, 2018).

---

[11] The second issue in Page's pro se brief also relates in part to the exclusion of the same witnesses. To that extent, Page's second pro se issue is without merit for the same reasons. As part of his second pro se issue, Page also alleges that the trial judge erred by granting the State's pretrial motion in limine to preclude Page from offering "evidence of Alex Garner's behavior in jail." However, the record is unclear as to what evidence of Garner's "behavior" Page would have offered, and we cannot say that Page suffered any prejudice or that the trial judge abused his discretion with respect to this ruling either.

17

**VI.** **The trial judge did not err by telling the jury that Page had been indicted for possession of a firearm by a convicted felon.**

¶38. Page next claims that the trial judge violated URCCC Rule 11.03 by informing the jurors that Page had been indicted on four counts, including possession of a firearm by a felon. Rule 11.03 governs procedure for "cases involving enhanced punishment for subsequent offenses." URCCC 11.03. The rule's purpose is "to keep the jury from hearing evidence of . . . previous felonies" that are the basis for such enhanced punishment "so as to not influence its verdict on the present charge." *Edwards v. State*, 75 So. 3d 73, 76 (¶7) (Miss. Ct. App. 2011). Rule 11.03 does not apply to felon-in-possession charges. *Jones v. State*, 95 So. 3d 672, 676 (¶9) (Miss. Ct. App. 2011). In a felon-in-possession case, proof that the defendant is a prior convicted felon is not a matter of "enhanced punishment." It is an *element of the offense*, which must be proven and found by the jury beyond a reasonable doubt. As discussed above, Page refused to stipulate to his status as a prior convicted felon, so the State was required to prove that element. The trial judge did not violate Rule 11.03, and this issue is without merit.[12]

**VII.** **The trial judge did not abuse his discretion by denying Page's motion to exclude one page allegedly omitted from the State's discovery.**

¶39. Page next argues that the State committed a discovery violation by failing to disclose a lab report that was omitted from discovery provided by the State. During trial, Page's counsel moved to exclude part of a lab report, referred to as "Page 372," which contained the

---

[12] The indictment subsequently was amended to charge Page as a violent habitual offender. Consistent with Rule 11.03, the trial court did not mention Page's habitual offender status in the presence of the jury.

18

results of a test of a blood sample that was shown to be Cooper's blood. The State had provided the defendants with Bates-stamped discovery on a disc, and both defense counsel represented that they did not notice the omission of "Page 372" until trial was underway. Page moved to exclude the omitted page but did not request a continuance or mistrial. In response, the State noted that the disc was provided to the defendants more than a year before trial, and the State argued that defense counsel should have noticed the omission because "Page 372" was omitted from the disc (i.e., the disc skipped from page 371 to page 373) without explanation. The State also argued that the one-page omission was de minimis given that similar reports of other samples were disclosed. The trial judge found that the error was unintentional and that admission of the omitted page would not prejudice Page.

¶40. As discussed above, we review a trial judge's rulings on alleged discovery violations for abuse of discretion. Page did not request a continuance or a recess to review Page 372; he only requested that the document be excluded. However, even on appeal, Page fails to articulate how the admission of Page 372 prejudiced his defense. We find no abuse of discretion in the admission of Page 372.

### VIII. Page's remaining complaints about the jurors and the trial judge are procedurally barred and/or without merit.

¶41. The final issue raised in Page's pro se brief is comprised of four claims about jurors and the trial judge. All four claims are procedurally barred and/or without merit.

¶42. First, Page complains that a juror "was allowed to cry" and "became emotional" in open court before she was excused. The incident occurred after closing statements. Before he excused the jurors to deliberate, the trial judge asked whether there was any reason that

19

any of them could not go into the jury room, and one juror indicated that she could not. The judge asked the juror to approach the bench, and the judge noted for the record that the juror was "crying" and "visibly upset." The juror then stated that her son had been "shot" and "killed" at some earlier date, and, without further elaboration, she indicated that she was too emotional and distraught to deliberate. The judge excused the juror, and an alternate was substituted in her place. The jury then retired to deliberate without further incident. Neither defendant objected or moved for a mistrial. Accordingly, the issue is procedurally barred. *See Bush v. State*, 222 So. 3d 326, 334 (¶29) (Miss. Ct. App. 2017). Moreover, there is nothing in the record to suggest that the incident prejudiced Page in any way.

¶43. Second, Page complains that the judge did not excuse a juror despite observing her sleeping during opening statements. However, the judge raised the issue with the parties, and neither defendant requested the juror's removal. Therefore, the issue is procedurally barred. *See id.* at 333-35 (¶¶28-31). Moreover, the judge asked the parties to help him keep an eye on the juror, stating that an attentive jury was "important to all sides" and that he would not allow such inattention. There is nothing in the record to indicate that the juror ever slept during the presentation of the evidence. This issue is without merit.

¶44. Third, Page claims that one juror "was like a bobble head doll" during the State's closing argument. Page does not elaborate, and there is nothing in the record to support this assertion. The issue is procedurally barred and without merit.

¶45. Fourth, Page complains that the trial judge questioned a witness, and he asserts that "the judge expressed pure hostility" to the witness and to Page's counsel, who objected. He

cites to the trial judge's brief questioning of Alex Garner. Garner stated that he did not recognize the typed transcript of his statement to law enforcement, and the trial judge briefly questioned him to clarify his testimony. The defendants objected to the judge's questions, and their objections were overruled. The judge stated that he was within his discretion to restate a question to the witness to clarify the witness's answer. We agree.

¶46. A trial judge "may examine a witness regardless of who calls the witness," M.R.E. 614(b), and it may be proper to do so to clarify the testimony of "a witness whose testimony is confused and in a fog." *Griffin v. State*, 171 Miss. 70, 74, 156 So. 652, 653 (1934). "A judge may question a witness so long as the questioning is 'for the purpose of aiding the jury in understanding the testimony.'" *Brent v. State*, 929 So. 2d 952, 955 (¶7) (Miss. Ct. App. 2005) (quoting *United States v. Saenz*, 134 F.3d 697, 702 (5th Cir. 1998)). However, the judge should not "display[] partiality, become[] an advocate, or . . . convey[] to the jury the impression that he has sided with the prosecution." *Id.* at 955-56 (quoting *Layne v. State*, 542 So. 2d 237, 242 (Miss. 1989)). In this case, the judge did not display partiality or advocate for the prosecution. There is no support in the record for Page's claim that the judge displayed "hostility" to the witness or to counsel. The judge only clarified the testimony of a confused witness. This issue is also without merit.

**CONCLUSION**

¶47. None of the issues raised by Page's appointed counsel or by Page pro se warrant reversal.[13] Therefore, Page's convictions and sentences are affirmed.

---

[13] As noted previously, Page's appellate counsel also argues that he is entitled to a new trial based on cumulative error. We have found only one harmless error (in the limitation of

21

¶48. **AFFIRMED.**

      **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE AND TINDELL, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

Page's cross-examination of Alex Garner). Therefore, Page's cumulative error argument also fails. *See Keys v. State*, 219 So. 3d 559, 568 n.8 (Miss. Ct. App. 2017). As noted above, Page's ineffective assistance claim is dismissed without prejudice, so he may assert such a claim in a properly filed motion for post-conviction relief.