# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00874-COA

**JARVAS MARTEZ PERKINS A/K/A JARVAS PERKINS A/K/A JARVAS LONTRELL PERKINS**                                    APPELLANT

v.

**STATE OF MISSISSIPPI**                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/29/2023 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/06/2024 |
| MOTION FOR REHEARING FILED: | |

### BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1.     Jarvas Martez Perkins was found guilty of possession of a firearm by a felon in violation of Mississippi Code Annotated section 97-37-5 (Supp. 2021) in the Circuit Court of Forrest County, Mississippi, on June 22, 2023. The trial court sentenced Perkins to serve ten years in the custody of the Mississippi Department of Corrections (MDOC), with that sentence set to run consecutively to the sentence previously imposed by the trial court in case number 18-636W.[1] Aggrieved by his conviction and sentence, Perkins appealed.

---

[1] On April 7, 2021, Perkins pled guilty to possession of a controlled substance (enhanced) and received a sentence of six years in MDOC's custody. In that case, the circuit

## FACTS AND PROCEDURAL HISTORY

¶2.     At the time of trial, Officer Devion White was employed by the Hattiesburg Police Department in the "Special Operations Division." White testified that on May 1, 2022, he and the five other members of the special operations division were conducting a safety checkpoint at the intersection of Eastside Avenue and Scooba Street in Hattiesburg. According to White, about 2 a.m. the officers began to notice that people were parking vehicles in the roadway just short of the checkpoint.[2] White explained that the vehicles were illegally parked, partially blocking the lane of travel for oncoming traffic. White further testified that it appeared that these vehicles were attempting to avoid the checkpoint. As a result, White decided to approach the vehicles with other officers.

¶3.     As he approached the vehicles, White told the group of people the four vehicles were improperly parked and needed to be moved. White testified that he was "walking along the vehicles just doing typical police stuff, looking and shining [his] light inside of them." White noticed Perkins was walking behind him and asked him if he had his driver's license with him. He asked Perkins whether the second vehicle in line, a dark-colored sedan, was his vehicle, and Perkins said no. White asked Perkins if he was driving. Perkins said, "[Y]eah," and then motioned toward the next vehicle in line, a white Volvo. White testified that when

court suspended the six-year sentence except time already served and was placed on post-release supervision for five years. When Perkins violated his post-release supervision, it was revoked, leaving him with the entire sentence to serve.

[2] Officer White wore a body camera that recorded the events he described in his testimony. The video was introduced into evidence and viewed by the jury at trial.

they approached the Volvo, Perkins "grabbed the door handle with his left hand," and White believed he was about to open the door when Perkins stopped and let go of the door handle. Perkins then asked White if he wanted to see his license. Perkins gave the officer his license, and as White walked toward the rear of the white Volvo, he told Perkins he could get back into the vehicle. Instead, Perkins followed him to the back of the vehicle, looked as if he were about to ask a question, but then stopped. When White walked back toward the driver's side front door, Perkins again followed him. White then advised Perkins he was going to conduct a "pat down" of his person and asked Perkins if he had "anything on him." Perkins said he did not have anything on him and did not have anything in the vehicle. When White asked for permission to look into the vehicle, Perkins refused. While shining his flashlight through the driver's window, a firearm was clearly visible between the center console and the driver's seat. White then asked the two female passengers in the vehicle to step out of the car on the passenger side. Turning back to Perkins, White asked if he had ever been to prison, been on probation, or ever had to report to a probation officer. Perkins said no. At this point, White placed Perkins in handcuffs. According to White, Perkins then began to "distance himself" from the firearm, telling him it belonged to his "home girl." When White discovered that Perkins was a felon, he placed Perkins under arrest and read him his *Miranda* rights.[3] White testified that the firearm was a black Springfield .40 caliber-semi-automatic handgun and identified it at trial.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶4. At trial the State also called Patricia Southerland as a witness. She was employed by MDOC as a probation and parole agent. A certified copy of an "Entry of Plea and Judgment of the Court" was admitted into evidence as proof that Perkins was a felon on the date of his arrest in this matter. The prior conviction was filed of record in the Circuit Court of Forrest County, Mississippi, on April 7, 2021. Southerland identified Perkins as the person convicted in the prior case. The packet introduced by the State included a document signed by both Perkins and Southerland wherein Perkins acknowledged his acceptance of the terms of his probation, and Southerland acknowledged that Perkins was given a copy of the documents.

¶5. At the close of the State's case-in-chief, the defense moved for a directed verdict arguing that "after hearing the evidence put forth by the State, it is our opinion that no reasonable jury could look at this evidence and make any determination of guilt." The trial court found that there was enough evidence of constructive possession to justify overruling the motion for a directed verdict. The defense called no witnesses. The trial court read the instructions of law to the jury, and the jury heard closing arguments of counsel. After deliberation, the jury found Perkins guilty of possession of a firearm by a felon. After Perkins' motion for judgment notwithstanding the verdict or a new trial was denied, Perkins filed his notice of appeal.

## ANALYSIS

¶6. Perkins raises four issues on appeal: (1) Was the evidence sufficient for conviction? (2) Was the verdict contrary to the weight of evidence? (3) Did incompetent character

evidence render Perkins' trial unfair? (4) Did the trial court improperly limit Perkins' cross-examination of Officer White? We will address the first two issues under the same heading and the remaining issues separately.

### I. Was the evidence legally insufficient or against the overwhelming weight of the evidence?

¶7.     Perkins challenges the sufficiency and weight of the evidence leading to his conviction and sentence. We explained our analysis of sufficiency and weight of the evidence in *Jones v. State*, 380 So. 3d 974, 980-81 (¶¶13-14) (Miss. Ct. App. 2024):

> We review a challenge to "the legal sufficiency of the evidence" de novo, but the evidence must be "viewed in a light most favorable to the State." *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005). This means that "all credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Id*. "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all the elements of the offense. *Id*.
>
> Different standards of review govern a challenge to the weight of the evidence. *Burden v. State*, 347 So. 3d 174, 176 (¶8) (Miss. 2022). A challenge to the weight of the evidence addresses the trial judge's denial of a motion for a new trial, which we review only for an abuse of discretion. *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). Our standard of review is deferential because the "trial judge is in the best position to view the trial." *Id*. at 291 (¶18) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶16) (Miss. 2000)). "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped" to rule on a new trial motion. *Id*. at 291-92 (¶18) (quoting *Amiker*, 796 So. 2d at 947 (¶16)). When we review a challenge to the weight of the

5

evidence, we also afford great deference to the jury's verdict. *Id.* at 289 (¶1) [(Miss. 2017)]. The jury is the fact-finder, and this Court will not "assume[ ] the role of juror on appeal." *Id.* As the Supreme Court made clear in *Little*,

> [w]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as [an] appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

¶8. Perkins challenges his conviction arguing that since he was not in direct possession of the firearm, the State was required to prove constructive possession and failed to do so. Perkins argues that "[t]here is simply no proof that [he] had knowledge of the handgun or exclusive dominion over the Volvo during the relevant time frame." Perkins concludes that the State's evidence "creates only a suspicion that [he] had knowledge, dominion and control of the handgun in the Volvo." Since the evidence shows that others in the vehicle had access to the handgun, that left "the jury to only guess at their verdict."

¶9. In *Roney v. State*, 294 So. 3d 1268, 1272 (¶14) (Miss. Ct. App. 2020), we set forth how constructive possession is established:

> Because the firearm was not actually found on Roney's person, the State had to prove that Roney constructively possessed the firearm. "Constructive possession allows the prosecution to establish possession of contraband when evidence of actual possession is absent. Constructive possession is established by showing that the contraband was under the dominion and control of the defendant." *Williams v. State*, 971 So. 2d 581, 587 (¶16) (Miss. 2007) (quoting *Roberson v. State*, 595 So. 2d 1310, 1319 (Miss. 1992)). The State must show the defendant had knowledge of the firearm and "intentionally and consciously possessed [it]." *Evans v. State*, 802 So. 2d 137, 141 (¶12) (Miss. Ct. App. 2001). "Constructive possession may be established by direct evidence or

circumstantial evidence." *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985).

¶10.    Viewing the body-camera footage and Perkins' behavior on the night in question, a reasonable jury could find beyond a reasonable doubt that Perkins was driving the Volvo that night, that he knew the handgun was in the Volvo, and that the firearm was in his constructive possession.

¶11.    The video contains statements made by White, Perkins, and others on the scene that night. Although many of the statements made would be considered hearsay, because they were admitted into evidence without objection, the jury was entitled to consider such evidence in reaching its verdict. In *Shaheed v. State*, 205 So. 3d 1105, 1110 (¶16) (Miss. Ct. App. 2016), this Court stated:

> "[U]nobjected-to hearsay evidence, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting a verdict the same as any other competent evidence." *Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991). "Hearsay evidence, where admitted without objection, may properly be considered and given its natural and logical probative effect, as if it were in law competent evidence. Hearsay evidence admitted without objection may be regarded as sufficient to establish a fact in controversy." *Burns v. State*, 438 So. 2d 1347, 1350 (Miss. 1983) (quoting *Citizens Bank of Hattiesburg v. Miller*, 194 Miss. 557, 566, 11 So. 2d 457, 459 (1943)) (brackets, ellipsis omitted). The McCormick treatise on evidence elaborates:
>
> > If [inadmissible] testimony is received without objection, it becomes part of the evidence in the case and is usable as proof to the extent of its rational persuasive power. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. The inadmissible evidence, unobjected to, may be relied on in argument, *and alone or in part it can support a verdict or finding. At the trial court level, a party may rely on the evidence to defeat a directed verdict motion; and on appeal, the party may use the evidence to uphold the legal sufficiency of*

7

> *the evidence to support a judgment.* This principle is almost universally accepted. . . . [This principle] is most often invoked with respect to hearsay . . . .
>
> McCormick on Evidence § 54 (Kenneth S. Broun ed. 7th ed. 2013) (emphasis added; footnotes omitted).

Clearly, Perkins' words and actions on the video led White, and the jury, to believe that he was the driver of the white Volvo that evening and was in constructive possession of the firearm.

¶12.    In response to White's direction that the illegally parked vehicles needed to be moved, Perkins followed White and first denied that he was driving the black sedan and, instead, pointed to the Volvo as his vehicle. Perkins was seen on the video reaching to open the driver's door before he stopped and asked White if he wanted to see his license. Perkins denied that there was "anything" on his person or in the vehicle, which further indicated that he was driving the Volvo. He denied consent for White to search the vehicle, again indicating that he was in control of the vehicle. Although two females were in the vehicle, one in the front passenger seat and one in the rear seat on the passenger side, the handgun was not clearly visible from where they were sitting because it did not rise above the center console. Both females indicated that they rode with Perkins.

¶13.    Perkins told the officers that one of the females was driving, yet they were not in the driver's seat and denied having driven the Volvo. He also told White that the handgun belonged to his "home girl," which indicated that he knew the handgun was in the vehicle. When the issue of the Volvo being towed away came up, a third female, apparently from

8

another vehicle, said the Volvo was Perkins' mother's car and that she would drive it away. When the officers said they could not just give the vehicle to anybody, at least two of the females asked if they could ask Perkins' permission to drive the vehicle away. This was further evidence that those in the vehicle and those who knew Perkins knew that Perkins was in control of his mother's Volvo that evening.

¶14.    During the video, Perkins lied about whether he had a prior conviction and had been on probation. He said one of the passengers in the vehicle drove the Volvo, which they denied. He said he did not try to open the driver's door, which he clearly could be seen doing on the video.

¶15.    In *Johnson v. State*, 329 So. 3d 1219, 1225 (¶20) (Miss. Ct. App. 2021), this Court stated:

> In the case at hand, taking the evidence in a light most favorable to the State, we find sufficient evidence to support Johnson's conviction. The gun was found under the driver's seat where Johnson had been sitting and easily accessible to him just as in *Lewis v. State*, 112 So. 3d 1092, 1096 (¶13) (Miss. Ct. App. 2013), where we found that the evidence supported a conviction of possession of a firearm when a handgun was found under the driver's seat of the car that Lewis was driving. We determined that the handgun was subject to Lewis's dominion and control because he was the driver of the car. *Id*.

Drawing reasonable inferences in favor of the State, we find that there was legally sufficient evidence, particularly when viewing the body-camera footage, that a reasonable juror could find beyond a reasonable doubt that Perkins, a felon, was driving the Volvo and was in constructive possession of the firearm. Further, viewing the evidence in the light most favorable to the verdict, we cannot find that the verdict is so contrary to the overwhelming

9

weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

**II.      Did incompetent character evidence render Perkins' trial unfair?**

¶16.   We will address each instance raised by Perkins separately.

*Admission of Evidence of Perkins' Prior Felony Conviction*

¶17.   Perkins filed a pre-trial motion in limine to exclude evidence of other crimes and offenses unrelated to the current charge. At a pre-trial hearing in May 11, 2023, the State advised the court that it intended to offer an "Entry of Plea and Judgment of Court" at trial to meet its burden of proof that Perkins was a felon at the time of the indicted offense. The trial court advised counsel for Perkins that she could either stipulate that Perkins was a felon, or the State would have to introduce such proof. The trial court specifically referred Perkins' counsel to *Page v. State*, 269 So. 3d 440 (Miss. Ct. App. 2018). In *Page*, the State offered a certified court file that included numerous judgments relating to Page's prior criminal behavior. *Id*. at 448 (¶17). On appeal, Page contended that most of that file should have either been redacted or excluded pursuant to Mississippi Rules of Evidence 401, 403, and 404(b). *Id*. at (¶18). In rejecting that argument, we explained:

> We review a trial court's admission of evidence for abuse of discretion. *Chaupette v. State*, 136 So. 3d 1041, 1045 (¶7) (Miss. 2014). "We give great deference to the discretion of the trial judge, and unless we conclude that the [decision] was arbitrary and clearly erroneous, amounting to an abuse of discretion, the trial judge's decision will stand." *Id*. (internal quotation marks and brackets omitted). "Moreover, we may reverse . . . only if the admission or exclusion of evidence results in prejudice and harm or adversely affects a substantial right of a party." *Id*. (comma and internal quotation mark omitted). In this case, we find no abuse of discretion.

10

"[W]hen pursuing a felon-in-possession charge, if the defendant does not offer to stipulate to his status as a prior-convicted felon, 'the prosecution is entitled to prove its case by evidence of its own choice.'" *Minor v. State*, 89 So. 3d 710, 716 (¶18) (Miss. Ct. App. 2012) (quoting *Esco v. State*, 9 So. 3d 1156, 1165 (¶37) (Miss. Ct. App. 2008); *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997)) (brackets omitted). "When a prior conviction is an element of a crime, the State is authorized to introduce evidence of the conviction and is not limited in its method of proof." *Carter v. State*, 941 So. 2d 846, 854 (¶33) (Miss. Ct. App. 2006) (citing *Evans v. State*, 802 So. 2d 137, 141 (¶9) (Miss. Ct. App. 2001)). Here, Page expressly refused to stipulate to his status as a prior-convicted felon. Therefore, the State was "entitled to prove its case by evidence of its own choice."

. . . .

Generally speaking, a defendant in a felon-in-possession case is entitled to stipulate to his status as a prior-convicted felon, and he can thereby prevent the introduction of evidence of the specific nature of his prior crimes. *See Williams v. State*, 991 So. 2d 593, 605-06 (¶40) (Miss. 2008). However, the defendant cannot refuse to so stipulate—as Page refused in this case—and then dictate what evidence the State may use to meet its burden of proof. We find no abuse of discretion in the trial judge's ruling in this case.

*Page*, 269 So. 3d at 448-49 (¶¶18-20). The hearing concluded without the trial court making a ruling on the issue.

¶18.   On June 21, 2023, the first day of trial, after the jury was seated but outside the presence of the jury, the State asked the trial court to take judicial notice of the certified copy of Perkins' prior conviction that was ultimately admitted as Exhibit 1. Perkins objected and asked that the following paragraph be redacted from the exhibit:

IT IS FURTHER ORDERED AND ADJUDGED that the State shall not prosecute the Defendant for an unindicted charge with the Hattiesburg Police Department, incident # 2021030140.

The trial court again reminded Perkins' counsel that she could stipulate that Perkins had a

11

prior conviction and avoid the introduction of the entire document. After counsel chose not to enter a stipulation, the trial court found that the record of the prior conviction was

> a self-authenticating record under 901(a), which is admissible. And the incident number does not mention any kind of fact or anything like that. Most people wouldn't know what it was talking about.

The court found that the probative value of the document was not substantially outweighed by the danger of any unfair prejudice and admitted the document as Exhibit 1.[4] The court offered to give a limiting instruction at the appropriate time, if requested by the defense. We find that the trial court did not abuse its discretion by the admission of Perkins' unredacted prior felony conviction.

### *Statement by Officer White on Body-Camera Video*

¶19.    White's body-camera video was introduced as State's Exhibit 2. After the video was admitted into evidence but before it was played for the jury, defense counsel and the prosecutor came to an agreement regarding portions of the video that would be muted when played for the jury. The State announced the agreement, on the record, to the court. Based on the defense objections, the State agreed to mute the video from 5 minutes and 40 seconds to 6 minutes and 12 seconds. The State would also mute the video from 11 minutes and 45

---

[4] In choosing not to redact or "white out" a portion of the judgment, the trial court referenced a portion of the defense's voir dire of the jury pool where questions were asked concerning whether the potential jurors believed the criminal justice system was "fair," and the issue of "corruption" was discussed before the venire. The court expressed concern that entering the document with a portion of the document unnecessarily redacted "could tarnish the court."

seconds to 11 minutes and 59 seconds. The State also agreed to stop the video at 22 minutes and 55 seconds.

¶20. When the State was playing the video for the jury, the jurors heard a portion of the video where, apparently, White told the other officers that this is the guy, referring to Perkins, "that ran from [officer] Blank that time and threw out all that weed." The defense objected and asked to approach the bench. At the end of an extensive argument, on the record, both the State and the defense agreed that this was the substance of what the jury heard. The State maintained that was not a portion of the video objected to by the defense and that the parties had agreed to mute. Based on our review of the recording and the State's argument on the record, this statement was made on the video between 14 minutes and 16 seconds and 14 minutes and 20 seconds, clearly not within the times that the State had agreed to mute the video.

¶21. Perkins' counsel moved for a mistrial. Overruling the motion, the trial judge found that "even though I probably would not have allowed that in because it has nothing to do with this case, I do not think that statement is substantially prejudicial to Perkins in the vein it would keep him from getting a fair trial." The trial court gave defense counsel the opportunity to request a limiting instruction, but counsel elected not to do so.[5]

---

[5] The video was not available to the jury during deliberation. Had the jury asked to review the video, they would have been brought back into the courtroom and the video would have been played according to the court's instructions. The jury did not make such a request.

13

¶22. The trial court found:

> So basically this court finds that although a mistake was made and this comment was put into the record, in my opinion, based on everything available to me, reactions of the parties, the lawyers involved, what was said, the timing of it, what I heard, how quick the conversation went, I cannot find and do not believe that the comment resulted in substantial and irreparable prejudice to Mr. Perkins. I don't think that that comment would render the Defendant without any hope of receiving a fair trial in this case.
>
> Based on the comments of these jurors at voir dire, I have no reason to believe that at this point in time Mr. Perkins can't receive a fair trial. And I find that a mistrial is not appropriate because there has been no clear showing of substantial and irreparable prejudice.
>
> So I'm willing to -- I was willing to admonish the jury when they came back that the last comments and testimony on the tape you heard yesterday, you should disregard and not use in any way in reaching your verdict in this case. The Defendant for strategy purposes has indicated that the Defendant does not want the court to do that. And so I'm going to honor the Defendant's position.

¶23. In *Scates v. State*, 2023 WL 7316985 at *6 (¶¶23-24) (Miss. Ct. App. Nov. 7, 2023),

this Court explained:

> This Court "employs an abuse-of-discretion standard of review to determine whether a trial judge erred in denying a request for a mistrial." *Sharkey v. State*, 265 So. 3d 151, 155 (¶14) (Miss. 2019) (citing *Pitchford v. State*, 930 So. 2d 383, 386 (Miss. 2006)).
>
> The Mississippi Rules of Criminal Procedure make it clear that a mistrial may be declared if during the trial, either inside or outside the courtroom, misconduct by a party occurs resulting in substantial and irreparable prejudice to the movant's case. *Scott v. State*, 347 So. 3d 1173, 1175 (¶11) (Miss. 2022) (citing MRCrP 23.5). In such instances, the court is granted broad discretion to decide whether a mistrial should be granted. *Parks v. State*, 930 So. 2d 383, 386 (¶8) (Miss. 2006)); *see Harrell v. State*, 947 So. 2d 309, 316 (¶23) (Miss. 2007) (On review, "the trial judge is permitted considerable discretion in determining whether a mistrial is warranted because

14

the judge is best positioned to measure the prejudicial effect." (quoting *Parks*, 930 So. 2d at 386 (¶8))); *see also Roundtree v. State*, 568 So. 2d 1173, 1178 (Miss. 1990) (citing *Alexander v. State*, 520 So. 2d 127, 131 (Miss. 1988) (affirming a trial court's denial of a motion for mistrial on the grounds that "[c]ase law unequivocally holds that the trial judge is in the best position for determining the prejudicial effect of an objectionable remark"); *Reynolds v. State*, 585 So. 2d 753, 755 (Miss. 1991) (affirming a trial court's denial of mistrial on the grounds that the trial judge "is in the best position to determine if a remark is truly prejudicial [and] is given considerable discretion to determine whether a remark creates irreparable prejudice necessitating a mistrial").

¶24. The trial judge was in the best position to determine what, if any, prejudicial effect White's short statement on the video had on Perkins, and whether a mistrial should have been granted. Under the circumstances of this case, we cannot hold that the trial court abused its discretion in denying Perkins' motion for mistrial.

### III. Did the trial court improperly limit Perkins' cross-examination of Officer White?

¶25. On cross-examination, Perkins' counsel began to question White regarding his knowledge or memory of the Hattiesburg Police Department's policies concerning conducting checkpoints. When defense counsel attempted to refresh White's memory with a copy of the policy, the State objected. At a hearing outside the presence of the jury, the trial court allowed defense counsel to make a proffer.

¶26. According to defense counsel, police department regulations on checkpoints provide that officers are not supposed to "walk away" from a checkpoint but should let the vehicles come to them. She argued this would show that White "really had no business going over [to where Perkins was] to begin with." White testified during the proffer that the vehicles in

15

question were illegally parked on the wrong side of the road and were not coming through the checkpoint. White testified that he believed the cars were parking in that manner to avoid the checkpoint for a reason. In further response to defense counsel's questions about remaining at the checkpoint, White said, "You don't have to remain on the checkpoint and just let everything else just go crazy and you - - if you see a violation, go address the violation." Defense counsel also tried to introduce testimony that the police department's policy regarding abandoned or illegally parked vehicles requires an officer to identify the owner of the vehicle. Perkins' counsel argued that White did not follow that policy in this case.

¶27.    The trial court found the testimony regarding both policies irrelevant:

> THE COURT: All right. Just as with the checkpoint policy, I do not believe that the policy section regarding abandoned or illegally parked vehicles applies. It is not relevant. It doesn't tend to make any fact more or less probable than it would be without the evidence. It has nothing to do with where this officer was. I've already ruled that he had a right to be where he was. That the gun was in plain view looking in the window. So none of this makes any fact -- it's a legal issue. And the fact on Hattiesburg Police Department's abandoned vehicle policy, is not a consequence in determining the issues in this case.
>
> As to the checkpoint rules and also the abandoned vehicle policy, I'm applying Rule 402. Even if it was relevant, any probative value it has, and I don't think it has any, is substantially outweighed by the danger of one or more of the following: confusing the issues, misleading the jury on legal issues, undue delay, wasting time. And so my ruling is that you've made your proffer. It doesn't come in.

¶28.    Mississippi Rule of Evidence 402 provides that irrelevant evidence is inadmissible. In *Brannan v. State*, 319 So. 3d 1119, 1139-40 (¶84) (Miss. Ct. App. 2020), we explained:

"A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory." *Edmonds v. State*, 955 So. 2d 787, 798 (¶29) (Miss. 2007); *see also Philip Morris USA v. Williams*, 549 U.S. 346 (2007) ("[T]he Due Process Clause prohibits a State from punishing an individual without first providing that individual with an opportunity to present every available defense." (quotation marks omitted)). "While a defendant is entitled to present his defense, **the right is not without its limitations, as all evidence admitted in support of the defendant's theory of the case must comport with the Mississippi Rules of Evidence.**" *Scott v. State*, 231 So. 3d 1024, 1031 (¶12) (Miss. Ct. App. 2016) (quotation marks omitted), aff'd by an evenly divided Court, 231 So. 3d 995 (Miss. 2017).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the case." M.R.E. 401. The trial court has discretion to exclude even "relevant evidence if its probative value is substantially outweighed by a danger of," inter alia, "confusing the issues" or "misleading the jury." M.R.E. 403. "**A trial court has great latitude in admission or exclusion of evidence where the question is one of materiality or relevancy, and its decision should only be reversed where this discretion is abused.**" *Blocker v. State*, 809 So. 2d 640, 645 (¶20) (Miss. 2002) (citing *Eskridge v. State*, 765 So. 2d 508, 510 (¶7) (Miss. 2000)). In addition, to warrant reversal based on the exclusion of evidence: "two elements must be shown: error and prejudice to the party appealing." *Gray v. State*, 799 So. 2d 53, 61 (¶30) (Miss. 2001). In other words, "[w]e will not reverse a conviction based on a harmless error." *Chaupette v. State*, 136 So. 3d 1041, 1047 (¶12) (Miss. 2014).

(Emphasis added).

¶29.    White left the checkpoint area to approach the illegally parked vehicles before he ever spotted Perkins or recognized him. Thus, his leaving the checkpoint is irrelevant as to White's motives or what Perkins perceived as White's bias toward him. The abandoned-vehicle policy was also irrelevant because proving Perkins' ownership of the Volvo was not

required to establish that he was a felon in possession of a firearm. We find that the trial court did not abuse its discretion in limiting Perkins' cross-examination of White concerning department policies.

## CONCLUSION

¶30.    Having carefully considered the record and the briefs, none of the issues raised by Perkins warrant reversal. Therefore, Perkins' conviction and sentence are affirmed.

¶31.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.  WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**